UNITED STATES, Appellee,

v.

Albert Constantine LAWRENCE,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Herbert Constantine LAWRENCE,
a/k/a Albert Constantine
Lawrence, Defendant, Appellant.

Nos. 88–1694, 89–1268.

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1989.

Decided Nov. 21, 1989.

See also, D.C., 708 F.Supp. 461.

Olga M. Shepard, Hato Rey, P.R., by appointment of the Court, for defendant, appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty.,

Hato Rey, P.R., Jose R. Gaztambide, Asst. U.S. Atty., Rio Piedras, P.R., and Carlos A. Perez, Asst. U.S. Atty., San Juan, P.R., were on brief, for appellee.

Before BREYER, Circuit Judge, COFFIN, Senior Circuit Judge, and FAIRCHILD,* Senior Circuit Judge.

BREYER, Circuit Judge.

Herbert Lawrence appeals his conviction and sentence of 55 months imprisonment for unlawfully possessing and importing about 12 pounds of marijuana. 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute); 952(a) (importation); 955 (possession on board an aircraft). Lawrence claims that the evidence presented against him was legally insufficient to warrant conviction, that the district court should not have admitted his "involuntary" confession into evidence as rebuttal, and that the district court misapplied the sentencing guidelines. We believe appellant's position with respect to admissibility of involuntary confessions is correct; yet having reviewed the record, we can find no evidence that his confession was "involuntary." For that reason, and because we find his other claims without legal merit, we affirm the conviction and sentence.

■ 1. Lawrence argues that the district court should have granted his motion for acquittal brought pursuant to Fed.R. Crim.P. 29. The district court can grant such a motion only if, "viewing the evidence in the light most favorable to the prosecution," no "reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), and we can reverse that court's denial only if "the prosecution's failure is clear." *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978). Lawrence cannot satisfy these tests.

The government produced witnesses and physical evidence that showed the following. Lawrence arrived at the San Juan airport on January 9, 1988, on a British West Indies Airlines flight en route from Jamaica to Antigua. A customs official boarded the aircraft with a marijuana-detecting dog. The dog stopped next to luggage with Lawrence's name on the claim tags, and the officials opened the bags and found about twelve pounds of marijuana hidden inside. They went to the passenger cabin of the plane, identified Lawrence, and arrested him. They later found that Lawrence possessed corresponding claim tickets for the luggage. This evidence is more than sufficient, legally speaking, to permit conviction (particularly since a jury might simply have disbelieved Lawrence's testimony that the luggage containing the marijuana actually belonged to someone else).

2. Lawrence also says that the district court erred in admitting into evidence statements that a customs official said Lawrence made when officials questioned him immediately after his arrest. Inspector de Leon testified that Lawrence had pointed to a table with his luggage and the marijuana visible on top and said, "Yes, those things are mine." The inspector testified that Lawrence "mentioned that he was going to declare himself guilty because the stuff was his and he didn't want to wait in jail for trial and lose time in waiting for trial and all that." The district court initially determined that the government could not introduce these statements into evidence because they were not "voluntary" statements "[u]nder 3501," 18 U.S.C. § 3501(b) (setting forth criteria for determining when a confession is "voluntary" or "coerced"). Subsequently, however, Lawrence testified on his own behalf. The district court then permitted the prosecution to introduce these statements in rebuttal (to impeach Lawrence's credibility). In doing so, the court relied on *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), for the proposition that the government can use an unlawfully obtained confession as "rebuttal testimony."

■ Lawrence says that a district court may not admit an involuntarily obtained confession into evidence at all, neither dur-

* Of the Seventh Circuit, sitting by designation.

ing the prosecution's main case nor in rebuttal. The law supports Lawrence's position. Although *Harris* says that the government may use *certain* statements for impeachment purposes that would otherwise be inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court noted in *Harris* that there was no "claim that the statements made to the police were coerced or involuntary." 401 U.S. at 224, 91 S.Ct. at 645. The Supreme Court later specifically stated that "a defendant's compelled statements, as opposed to statements taken in violation of *Miranda*, may not be put to any testimonial use whatever against him in a criminal trial." *New Jersey v. Portash*, 440 U.S. 450, 459, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979). To use compelled statements against a defendant, either in the government's direct case or on rebuttal, would compel the defendant to testify against himself, contrary to the Constitution. *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964).

■■■ The district court's misunderstanding of the law does not help the defendant, however, for after reviewing the record, we can find virtually no evidence tending to show that his statements were coerced, compelled or involuntary. The record reveals no "physical or psychological pressures" that could "overr[i]de the defendant's will," *Portash*, 440 U.S. at 459, 99 S.Ct. at 1297; rather, it shows that the statements were "the product of a rational intellect and a free will," *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963) (quoting *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960)). The district court's contrary conclusion is "clearly erroneous." *United States v. Holmes*, 632 F.2d 167, 168–69 (1st Cir.1980) (per curiam) (district court's determination that statements were voluntary will be sustained unless clearly erroneous).

The court held a voir dire with respect to the admissibility of Lawrence's statements in the government's case in chief. The court had previously heard customs inspector Lopez testify that, after asking Lawrence to come forward in the aircraft cabin, "I placed him under arrest. I notified him that we found some marijuana in his luggage and I read him his constitutional rights." Lopez had also testified that he then took Lawrence to the customs enclosure about 200 yards away and took off his handcuffs. The court knew from prior discussions outside the jury's presence that Lawrence had a previous marijuana conviction. During the voir dire, outside the presence of the jury, Inspector de Leon testified that three other agents were present in the customs enclosure during the questions, that the agents had removed Lawrence's handcuffs, that they read him his rights for the second time, that he signed a copy of those rights, that he seemed to know how to read and write, and that, though he was initially "scared," he appeared "much calmer after ten or fifteen minutes." De Leon indicated that the agents asked mostly routine questions, and he implied that Lawrence had made the statements in question a rather brief time after the questioning began.

Lawrence also testified at the voir dire. But he said nothing that cast any doubt on Inspector de Leon's version of events. Rather, his testimony simply consisted of repeated denials that he *had made* the incriminating statements. Moreover, his attorney argued to the court that the statements had not been made. She used the word "involuntary" in her objection, but she pointed to nothing that suggested that the statements had been obtained through coercion.

The district court, in finding the confession "involuntary," said the following:

> There is no evidence that the defendant knew the nature of the offense with which he was suspected.... Other factors indicate a coercive atmosphere, including the presence of three agents or officers, the recent removal of handcuffs and the defendant's recent arrival from a foreign country.

The first of these reasons is not accurate, however, for Inspector Lopez testified that he told Lawrence that he had found marijuana in Lawrence's suitcase (and the court was aware of Lawrence's prior marijuana conviction). The importance of the last factor is doubtful given the number of Lawrence's trips to the United States and his three prior convictions in this country. But, regardless, if this factor, the presence of three officers, and the recent *removal* of handcuffs were sufficient by themselves (where *Miranda* warnings were given and the questions were fairly brief) to show "coercion," then few post-*Miranda*-warning statements would be admissible. We can find nothing in the case law that warrants such a conclusion. Confessions obtained under circumstances at least as "coercive" as those involved here have been held to be voluntary. *See, e.g., Stroble v. California*, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952) (confession not involuntary where 19 officers present during two-hour interrogation in district attorney's office); *United States v. Kiendra*, 663 F.2d 349 (1st Cir.1981) (confession not involuntary where defendant with ninth-grade education had been in solitary confinement and on hunger strike for month preceding confession, and defendant had signed waiver of rights); *United States v. Holmes*, 632 F.2d 167, 168 (1st Cir.1980) (confession not involuntary where defendant had consumed alcohol and drugs); *United States v. Parker*, 549 F.2d 1217, 1220 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977) (confession not involuntary where defendant questioned by federal agents for four hours despite disputed testimony concerning use of promises and physical force by agents). In cases where a confession has been held to be involuntary, the evidence of involuntariness has typically been much stronger than in this case. *See, e.g., Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (confession involuntary where defendant confined to hospital bed was interrogated for four hours despite request for a lawyer); *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) (confession involuntary where defendant held in custody and interrogated repeatedly for 16 days without being advised of rights); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (confession involuntary where defendant held incommunicado for 16 hours and not permitted to call wife or attorney until he confessed); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (confession involuntary where 19-year-old defendant held incommunicado for over two days, deprived of food, threatened with mob violence, and not advised of rights).

Accordingly, we find the court's conclusion of "involuntariness" insupportable on the basis of the record before us. Since the statements were admissible, the court's admission of them for rebuttal purposes was not erroneous. *J.E. Riley Investment Co. v. Commissioner of Internal Revenue*, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940) ("Where the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action.").

■ 3. Lawrence claims that the district court erred in sentencing him to 55 months in prison. He first notes that the court applied the career offender provision of the Sentencing Guidelines. Guidelines § 4B1.1 (1988). In doing so, Lawrence says, the court counted his prior convictions twice: once in deciding that the career offender Guideline applies, and again in deciding to use column VI of the sentencing table. He is correct, but this is what the Guidelines instruct the court to do. The career offender Guidelines carry out Congress's statutory instruction to the Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for adults whose conviction is their third for a "crime of violence" or a crime involving drugs. 28 U.S.C. § 994(h). Accordingly, the Guidelines specify that a court shall first determine whether the conviction in question falls within that category. If so, the court must choose an offense level that varies depending upon the "maximum" penalty "authorized" by the statute

of conviction, and a "career offender's criminal history category in every case shall be Category VI." Guidelines § 4B1.1. In this case, the crimes of conviction carry a maximum authorized penalty of "5 years or more but less than 10 years." Consequently the offense level was 17 and the criminal history category VI, which is the level and category that the court applied.

The appellant also argues that the district court should have sentenced him to only 51 months, the bottom end of the Guidelines range. The court had previously imposed a sentence of 63 months, believing, mistakenly, that the appropriate offense level was 19 and the appropriate sentencing range 63–78 months. In amending the sentence, the court stated that "[a]lthough ... the basis for the lower-end sentence still remains, ... the lowest part of the lower range is not warranted." It is up to the district court to determine where within the Guideline range it will set a sentence.

For these reasons, the judgment of the district court is

*Affirmed.*