Cassell v. State of NH            CV-95-593-JD   04/15/97
                UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE


Jerome E. Cassell

        v.                              Civil No. 95-593-JD

State of New Hampshire


                            O R D E R


     The petitioner, Jerome Cassell, brought this action under 28

U.S.C. § 2254, seeking a writ of habeas corpus.  Before the court

is the motion for summary judgment of the respondent, the State

of New Hampshire (document no. 106).


                          Background

     Following a jury trial and based primarily on the testimony

of his victim, the petitioner was convicted in Strafford County

Superior Court in August 1992 for having committed aggravated

felonious sexual assault in violation of N.H. Rev. Stat. Ann.

("RSA") § 632-A:2.[1]  He currently is serving a seven-and-one-half

to fifteen year sentence at the New Hampshire State Prison.

     Following his conviction, the petitioner appealed his

conviction to the New Hampshire Supreme Court and also filed a

_____

     [1]In an order on the petitioner's motion to set aside his
conviction and for a new trial, the trial judge opined that the
victim was among "the most credible witnesses [he had] ever
encountered," and described her testimony as "compelling."

motion for a new trial and to set aside his conviction in Strafford County Superior Court. After this motion was denied, the petitioner appealed the decision to the New Hampshire Supreme Court. The New Hampshire Supreme Court consolidated his post-conviction claim with his direct appeal and, on October 24, 1995, affirmed the plaintiff's conviction. The court expressly addressed only the petitioner's claim that the trial court committed reversible error by failing to instruct the jury on the proper use of his prior convictions for property-related offenses[2] and summarily rejected the petitioner's remaining twenty-eight claims. See State v. Cassell, 140 N.H. 317 (1995). While his appeals were pending, the petitioner also filed a petition for a writ of habeas corpus in state court and a petition for a writ of mandamus to the New Hampshire Supreme Court. The trial court denied the habeas petition, and the New

---

[2]Under New Hampshire law, a trial judge ordinarily must instruct the jury about the proper use of a defendant's previous convictions if such evidence is elicited on cross-examination for impeachment purposes. See State v. Skidmore, 138 N.H. 201, 202, 636 A.2d 64, 65 (1993). However, because the petitioner's previous convictions came to light during his direct testimony and because the petitioner did not make a request for a limiting instruction, the New Hampshire Supreme Court ruled that none was required in the petitioner's case. See State v. Cassell, 140 N.H. 317, 318, 666 N.H. 953, 954 (1995) (noting that "the trial court could reasonably have determined that the [petitioner's] counsel elicited this information as a matter of trial tactics and that counsel did not want to call further attention to it through an instruction to the jury").

2

Hampshire Supreme Court denied both the appeal of that denial and the mandamus petition, without prejudice to the petitioner's rights to raise his properly preserved claims in his appeal. The instant petition was filed on December 11, 1995.

Discussion

The court has gleaned ten separate categories of arguments from the petitioner's voluminous pleadings in support of his assertion that he is "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (West 1994). The court considers the petitioner's assertions seriatim.[3]

---

[3]28 U.S.C. § 2254(d) was amended effective April 24, 1996, to provide that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The United States Supreme Court has granted certiorari to determine whether the amendment to § 2254(d) applies to habeas petitions, such as the current one, that were pending as of April

A.  Fifth Amendment Violation

     The petitioner first asserts that his conviction was obtained in violation of his right against self-incrimination because certain statements he made to James Trueman, the chief of police of Middleton, New Hampshire, were admitted into evidence. Specifically, the plaintiff objects to Trueman's testimony concerning a telephone conversation between the petitioner and Trueman about the alleged assault after the petitioner had been taken into custody, and to testimony concerning a conversation about the assault between the petitioner and Trueman while Trueman was driving the petitioner to his arraignment.

     The petitioner's claims are without merit.  Distinct from a petitioner's rights under Miranda v. Arizona, 384 U.S. 436, 474 (1966), the Fifth Amendment "limits prosecutors' ability to use testimony that has been compelled."  Baltimore City Dep't of Social Servs. v. Bouknight, 493 U.S. 549, 562 (1990) (collecting cases).  The petitioner has offered no factual or legal basis to support his contention that he was compelled to provide

_____

24, 1996.  See Lindh v. Murphy, 117 S. Ct. 726 (1997), granting cert. to Lindh v. Murphy, 96 F.3d 856, 861-68 (7th Cir. 1996) (holding that amendment applies to habeas petitions filed prior to April 24, 1996).  Because the petitioner has failed to establish that he would be entitled to habeas relief either under the current § 2254 or under the more deferential pre-amendment standard of review, the court need not address the retroactivity question currently before the Supreme Court.

information to Trueman during a telephone conversation during which he was free to hang up. See generally United States v. Lawrence, 889 F.2d 1187, 1189 (1st Cir. 1989) (statement is compelled if it is result of physical or psychological pressures that can override defendant's will). As to the petitioner's contention concerning his conversation about the alleged assault with Trueman en route to his arraignment, it was the petitioner who introduced evidence of the statements he made during that conversation.[4] Because no prosecution witness, including Trueman, testified that the petitioner made incriminating statements during this conversation, it follows that no compelled testimony was used against the petitioner.

B. Violation of Petitioner's *Miranda* Rights

The petitioner next contends that his statements during the above-mentioned conversations with Trueman were erroneously admitted because he was not read his Miranda rights prior to the commencement of custodial interrogation. These contentions also

---

[4]During cross-examination, the petitioner testified that he told Trueman on the way to his arraignment that the victim had rubbed his back on the day of the alleged assault. On rebuttal, Trueman denied that the petitioner made the statement in question, and testified that he informed the petitioner of his Miranda rights and cautioned him not to talk about the case as soon as he started to do so.

are unavailing.  As noted above, the statements made in the car were introduced by the petitioner, and thus are not subject to Miranda's exclusionary rule.  As to the introduction of the statements made by the petitioner during his telephone conversation with Trueman, the record indicates that these statements were elicited by the prosecution during its rebuttal for the purpose of impeaching the petitioner's trial testimony suggesting that (1) the victim had rubbed the petitioner's back on the day that the sexual assault was alleged to have taken place; and (2) the petitioner had seen the victim walking on the side of the road on the day of the assault, appearing to be "crazy-eyed."  The court finds no error in the admission of this evidence for the purpose of impeaching the petitioner's testimony.  See Harris v. New York, 401 U.S. 222, 226 (1971).

C.  Prosecutorial Misconduct

   1.  Closing Argument

The petitioner claims that the prosecutor accused defense counsel of being a liar, made prejudicial remarks about the petitioner, and vouched for the credibility of prosecution witnesses during his closing argument.  However, the court has reviewed the prosecutor's closing argument and finds no evidence that prosecutorial misconduct "so poisoned the well that a new

6

trial is required." United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994) (citation and quotation marks omitted). Although at one point the prosecutor suggested to the jury during his closing argument that the evidence presented by the defendant was "an attempt to mislead you, to mischaracterize what the evidence in this case is about and they've done it throughout the case" and at other times used similar rhetoric, the trial judge cautioned the jury that

> attorneys are allowed to make arguments as to what they
> believe the evidence has shown and what they believe
> the law is but it is not appropriate or proper to say
> that an attorney is attempting or trying to mislead
> anybody. If one side argues that the other side's
> evidence is misleading or a witness is trying to be
> misleading, that's one thing but it is not appropriate,
> you should not return any verdict based on any
> statement that you think came from [the prosecutor]
> that [defense counsel] is attempting to mislead by
> either his questions or by his defense.

In light of the content and context of judge's curative instructions and the strength of the victim's direct testimony against the petitioner, the court cannot conclude that the prosecutor's conduct was likely to have affected the trial's outcome. See id. (identifying relevant factors).

7

2.    Use of Perjured Testimony and Conspiracy to Convict the
       Petitioner

Relying on various inconsistencies in the testimony
introduced at trial, the petitioner asserts that the prosecution
knowingly introduced perjured testimony.  Relatedly, the
petitioner contends that the prosecution was involved in an
overarching conspiracy to convict him that included the
alteration and fabrication of evidence and the nondisclosure of
exculpatory evidence.  The court has reviewed these claims and
finds them to be without any evidentiary support and therefore
without merit.  See, e.g., United States v. Lebon, 4 F.3d 1, 2
(1st Cir. 1993) (per curiam) (citing Tapia v. Tansy, 926 F.2d
1554, 1563 (10th Cir. 1991)).


D.    Ineffective Assistance of Counsel

The petitioner next contends that he was denied the
effective assistance of counsel guaranteed by the Sixth Amendment
because trial counsel was burdened with a conflict of interest
and because trial counsel made a series of errors at or in
preparation for trial.[5]

---

[5]In assessing this claim, the court notes that at the
hearing on his motion for a new trial and to set aside his
conviction, the petitioner refused to permit the prosecutor to
question his trial counsel, citing attorney-client privilege.

In <u>Cuyler v. Sullivan</u>, the Supreme Court held that a criminal "defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 446 U.S. 335, 349-50 (1980). However, the court cautioned that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." <u>Id.</u> at 350. Here, the petitioner has offered only his bare assertion that his trial counsel defrauded him out of money, apparently by moving to withdraw after the entry of the verdict against the defendant. The petitioner's allegation is insufficient to warrant an inference that counsel actively represented conflicting interests, and thus does not constitute a meritorious basis for habeas relief.

To succeed on his claim of ineffective assistance of counsel based on counsel's deficient performance at or in preparation for trial, the petitioner must show "both that trial counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial." <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir. 1996) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688-89 (1984)). The court's inquiry

9

into the reasonableness of counsel's performance is highly deferential and reflects a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (quotation marks omitted). In order to satisfy the "prejudice" prong, the petitioner "must affirmatively prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Strickland, 466 U.S. at 694 (quotation marks omitted)).

At least three of the petitioner's seven separate assignments of error by trial counsel rest on misunderstandings of the applicable law. Although the petitioner claims that trial counsel should have objected to the introduction of one prosecution witness's testimony concerning the victim's reputation for truthfulness, this evidence was admissible because the petitioner's trial counsel had previously attempted to undermine the victim's credibility by suggesting that she had fabricated her story. See N.H. R. Evid. 608(a). Similarly, as noted supra, trial counsel's failure to move prior to trial for suppression of the petitioner's statements made during a telephone call with Trueman did not constitute deficient performance because the statements were properly admitted for impeachment purposes. Finally, the record indicates that trial

10

counsel did not confuse New Hampshire Rules of Evidence 404 and 609. Despite trial counsel's submission of a motion in limine to suppress the petitioner's prior convictions, these convictions were admitted under Rule 609, at the trial court's discretion, for the purpose of impeaching the petitioner's credibility.

Turning to the petitioner's remaining claims of ineffective assistance of counsel, the court will not second-guess trial counsel's decision to bring to the jury's attention the fact that the petitioner was incarcerated after being arrested. The petitioner refused to permit his trial counsel to testify during his postconviction hearing in state court and therefore has necessarily limited the information available to the court to assess his ineffective assistance claims. The court will not speculate about the strategic decisions of counsel. In any event, the references to the petitioner's incarcerated status were limited to his brief incarceration following his arrest for the crime with which he was charged, and both defense counsel and the trial judge emphasized to the jury that the petitioner was innocent until proven guilty. Under these circumstances, and in light of the strength of the victim's testimony, there is no reasonable probability that the outcome would likely have been different but for trial counsel's decision.

Nor does the court find fault with trial counsel's closing

11

argument.  Although the petitioner has characterized it as a "hodge-podge of musings of different defense theories," the record indicates that trial counsel's closing argument exposed several inconsistencies in the prosecution's case and fell within the wide realm of competent representation.

Finally, as to the petitioner's contentions that trial counsel failed to object to certain out-of-court statements made by the victim, in spite of his prolific filings he has failed to carry his burden of identifying the unobjected-to statements in question and of establishing the prejudice resulting from their admission.  Similarly, as to the petitioner's contention that trial counsel failed to elicit opinion testimony of his good character, he has failed to establish that such testimony would have been reasonably likely to change the outcome of the trial.

E.    Trial Court's Abuse of Discretion and Misinterpretation of the Law

This assertion relates to the petitioner's contention that the trial judge improperly admitted evidence of his prior convictions under N.H. R. Evid. 609 for the purpose of impeaching his credibility.  However, as noted supra, the petitioner has failed to demonstrate that this evidence was improperly admitted.  Moreover, it is well-settled that "habeas review does not

ordinarily encompass garden-variety evidentiary rulings,"
Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491,
494 (1st Cir. 1989), and that habeas relief is only available to
correct evidentiary errors of constitutional magnitude, see Allen
v. Snow, 635 F.2d 12, 15 (1st Cir. 1980) (error must "so infuse
the trial with inflammatory prejudice as to render a fair trial
impossible" (quotation marks omitted)).  The introduction of the
petitioner's prior convictions, which were unrelated to the crime
with which he was charged and admitted solely for impeachment
purposes, does not rise to such a level.

F.  Improper Introduction of Evidence

The petitioner next contests the admission of evidence
indicating that the petitioner was incarcerated as a result of
the victim's allegations of sexual assault.  However, as noted in
the court's discussion of the petitioners's ineffective
assistance of counsel claim, the admission of this evidence was
not so prejudicial as to undermine confidence in the outcome of
the trial, let alone to "so infuse the trial with inflammatory
prejudice as to render a fair trial impossible."

To the extent the petitioner's evidentiary claim is based on
the introduction of perjured testimony and the trial court's
decisions concerning the admissibility of certain evidence, the

claim is denied for the reasons set forth in parts C.2. and E, supra, respectively. To the extent the plaintiff's claim is based on his assertion that the evidence adduced at trial, namely, the victim's testimony that she was raped by the petitioner, is insufficient to support his conviction, this claim is without merit. See infra part H.

G. Judicial Bias

The petitioner's next argument is that the trial judge failed to preside over his trial and over his sentencing in an impartial manner. In support of his argument, the petitioner points to the comments made by the judge in responding to the petitioner's request for a new attorney prior to the commencement of his sentencing hearing,[6] and to the fact that the judge's

---

[6]In granting the petitioner's request for a continuance and the petitioner's attorney's motion to withdraw, the trial judge stated to the petitioner:

> I'm going to continue this case, we're going to appoint a lawyer for you. But no matter what you do--let me make it clear to you right now. You can fire your next lawyer, you can throw a knife at your lawyer, your next lawyer can insult you until you're blue in the face. You're either going to be represented by that lawyer or you're going to represent yourself at the final [sentencing] hearing. You call off any witnesses, you do anything on your own that delays that, you might as well face the consequences. Do you understand that?

The judge later informed the petitioner that his sentencing

14

daughter was the assistant attorney general of state of New Hampshire at the time of the petitioner's trial.[7]

A habeas petitioner alleging a denial of due process based on judicial bias must prove either that the judge actually was biased against the petitioner, or that the appearance of bias is "so substantial as to create a conclusive presumption of actual bias." Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994) (quotation marks omitted); see also Bracy v. Gramley, 81 F.3d 684, 688 (7th Cir. 1996), cert. granted, 117 S. Ct. 1726 (1997). None of the examples of bias asserted by the petitioner, whether considered individually or collectively, satisfy this standard. The trial judge made the statements about which the petitioner has complained in response to the petitioner's request for a continuance of his sentencing, which the petitioner filed after having lodged a disciplinary complaint against his second attorney and informing the court that he was unprepared to proceed without a new attorney. Although the trial judge clearly was frustrated with the petitioner's actions, he granted the petitioner's request for a new attorney and gave him a full

---

hearing would not be delayed again "for any reason short of nuclear attack."

[7]In addition, the judge's son-in-law worked for the public defender's office.

opportunity to prepare for his sentencing hearing. With respect to the petitioner's assertion that the judge should have recused himself because of his daughter's and son-in-law's employment with the New Hampshire Attorney General's office and the Public Defender's office, respectively, this claim does not present a sufficiently substantial bias to require recusal. Cf. Fero, 39 F.3d at 1479 (no conclusive presumption of bias where trial judge's son worked as law clerk in district attorney's office and attended trial); Dyas v. Lockhart, 705 F.2d 993, 997 (8th Cir. 1983) (no conclusive presumption of bias where judge was uncle of prosecuting attorney and brother and father of two deputy prosecuting attorneys who participated in trial).

H. Constitutionality of Conviction Under RSA § 632-A:2

The petitioner contends that his conviction under RSA § 632-A:2 is unconstitutional because it was obtained solely on the basis of the victim's testimony, without any corroborating physical evidence.[8] This claim is without merit. As noted above, the victim gave "compelling" testimony that she was

---

[8]RSA § 632-A:6 provides: "The testimony of the victim shall not be required to be corroborated in prosecutions under this chapter." RSA § 632-A:6 (1986). To the extent the petitioner requests a declaration that this provision is unconstitutional, the court declines to create such a blanket rule.

16

sexually assaulted by the petitioner, and the court's review of the trial transcript confirms this conclusion. Under these circumstances, the court cannot conclude that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); cf. Gilbert v. Parke, 763 F.2d 821, 826 (6th Cir. 1985) (rape victim's testimony that habeas petitioner forced her to enter car, drove her to secluded area, and raped her sufficient to sustain conviction).

I. Instructions to Jury Concerning Petitioner's Prior Convictions

The petitioner next asserts that habeas relief is warranted because the trial court failed to instruct the jury concerning the proper use of his prior convictions.[9] To the extent this argument presents a due process claim that might entitle him to habeas relief, it is unavailing. The petitioner has provided, and the court has found, no support for the proposition that due process entitles a defendant who has not made a request for a cautionary instruction concerning the use of prior convictions to such an instruction. Because the court is not empowered to

---

[9]As noted supra, evidence of the petitioner's two prior property-related convictions were elicited during the petitioner's direct examination.

create new rules of criminal procedure on habeas review either under the case law established prior to the April 24, 1996, amendments to § 2254, see Teague v. Lane, 489 U.S. 288, 310 (1989), or under the 1996 amendments, see 28 U.S.C.A. § 2254(d)(1) (West Supp. July 1996), the petitioner's argument fails.

J.   Pre-Sentence Report

The petitioner's final contention is that the trial judge improperly relied on a pre-sentence report prepared by a probation officer whose supervisor, a former parole officer for the petitioner, had been named by the petitioner in a federal conspiracy complaint.  However, the petitioner has failed to articulate any evidentiary basis to support his allegation of bias on the part of the probation officer who prepared the report or his supervisor, and has not presented to the court any factual inaccuracies in the report.[10]

---

[10]The court notes that the petitioner declined to meet with the probation officer who was preparing the report and opted not to read it prior to his sentencing.

## Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 106) is granted.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

April 15, 1997

cc:  Jerome E. Cassell
     Jeffrey S. Cahill, Esquire

19