12 April 2000

No. 2--99--0356

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

CLARENCE KASIN and ) Appeal from the Circuit Court

PAUL KASIN, ) of Lake County.

)

Plaintiffs-Appellants, )

) No. 97--L--400

v. )

)

OSCO DRUG, INC., ) Honorable

) John R. Goshgarian,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, Clarence and Paul Kasin, brought a negligence action in the circuit court of Lake County against defendants, Dr. James A. Gross and Osco Drug, Inc. (Osco).  Subsequently, Dr. Gross was dismissed with prejudice.  As to Osco, plaintiffs alleged that  in dispensing the prescription drug Daypro Osco had negligently advised Clarence Kasin of the side effects of the drug when it failed to advise him "of symptoms to be aware of and possible injury to kidneys and possible renal failure."  As a result of taking the drug, Clarence Kasin suffered kidney failure, necessitating a kidney transplant from his brother, Paul Kasin.  

Osco filed a motion for summary judgment, arguing that, pursuant to the "learned intermediary doctrine," it owed no duty to warn of side effects of a prescription drug.  Additionally, Osco argued that its voluntary undertaking to warn of some side effects of a drug did not create a duty to warn of all side effects.  The trial court granted Osco's motion and entered summary judgment in its favor.  Plaintiffs filed a timely notice of appeal.

On appeal plaintiffs contend that the trial court erred in granting summary judgment in favor of Osco because (1) Osco's voluntary undertaking to provide an information or warning sheet with the prescription drug Daypro removed it from the protection of the learned intermediary doctrine and (2) by voluntarily undertaking to warn of certain side effects of Daypro, Osco became obligated to warn of all side effects of the drug.  

On or about May 23, 1995, Clarence Kasin visited Dr. James Gross for treatment of a swollen right ankle.  Kasin had never previously seen Dr. Gross.  Prior to his visit to Dr. Gross, Kasin had had no health problems and had received no medical treatment  for nearly 25 years except for flu in March 1995.  As a result, Kasin had no medical history.  

Dr. Gross prescribed Daypro to reduce the swelling in Kasin's ankle.  Kasin had the prescription filled at the Osco pharmacy in Round Lake Beach.  When he received his medication, he also received and read an information sheet about the medication.  That sheet included the following information:

"COMMON USES OF THIS DRUG:

For arthritic conditions, pain, inflammation, fever.

HOW SHOULD I TAKE IT?

Take with food or antacid to reduce stomach upset.  Avoid alcohol or aspirin.  Follow doctor's instructions.  Report other drugs you take/diseases you have.

ARE THERE ANY SIDE EFFECTS?

Very unlikely, but report: Eye/ear problems, change in urine color, bloody stools, difficulty breathing, mental changes."

No discussion occurred between Kasin and the pharmacist regarding the side effects or risks associated with Daypro.  At his deposition, Kasin acknowledged that he relied on his doctor rather than on Osco to advise him of any risks associated with taking the drug.  

Kasin took Daypro for 10 days.  During the first nine days, he experienced no side effects and felt normal.  On approximately the tenth day, Kasin noticed that he lacked energy and that his stools were black.  Later that day, Kasin collapsed.  He was taken to Harvard Community Hospital and then transported to Condell Medical Center, where he was diagnosed with three ulcers and renal failure.  At Condell, Kasin learned for the first time that he had been born with only one functioning kidney, which had now failed.  Kasin was placed on dialysis and, subsequently, underwent a kidney transplant in December 1995.  Kasin's brother, Paul, provided the donated kidney.  

On May 27, 1997, plaintiffs filed their negligence action.  Subsequently, Osco filed its motion for summary judgment, which the trial court granted.  This appeal ensued.

The purpose of summary judgment is not to try an issue of fact but to determine if one exists.  
Frye v. Medicare-Glaser Corp.
, 153 Ill. 2d 26, 31 (1992).   Summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits presented, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 530 (1996).  The existence of a duty owed by the defendant to a plaintiff is a question of law that may be determined on a motion for summary judgment.  
Jacob v. Greve
, 251 Ill. App. 3d 529, 534 (1993).  
This court's review of the trial court's ruling on a summary judgment is 
de novo
.  
Country Mutual Insurance Co. v. Hagan
, 298 Ill. App. 3d 495, 500 (1998).

Plaintiffs first contend that Osco's voluntary undertaking to provide an information or a warning sheet with a prescription drug removed it from the protection of the "learned intermediary doctrine."  The learned intermediary doctrine provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of a drug's known dangerous propensities and that physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients.  
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507, 517 (1987).  The doctrine precludes the imposition of a duty upon drug manufacturers to warn patients directly.  
Kirk
, 117 Ill. 2d at 519.  The doctrine also has been applied to exempt pharmacies and pharmacists from giving warnings to patients.  See 
Fakhouri v. Taylor
, 248 Ill. App. 3d 328 (1993); 
Leesley v. West
, 165 Ill. App. 3d 135 (1988).  

Plaintiffs concede that absent Osco's voluntary undertaking it would have been shielded from liability by the learned intermediary doctrine but argue that because Osco voluntarily undertook to warn of some side effects of Daypro it was removed from the protection of the doctrine.  Conversely, Osco maintains that pursuant to our supreme court's decision in 
Frye v. Medicare-Glaser Corp.
, 153 Ill. 2d 26 (1992), it was protected by the doctrine.

In 
Frye
 a pharmacist voluntarily undertook to affix to a prescription drug a label warning that the medicine might cause drowsiness.  The plaintiff sued both the pharmacy and the pharmacist under a voluntary undertaking theory of liability.  The plaintiff acknowledged that neither the pharmacy nor the pharmacist had the duty to warn of the dangerous side effects of the medication but argued that once they undertook to warn of dangerous side effects they undertook to warn of all potential dangers involved in taking the drug.  The supreme court rejected plaintiff's argument and found that the defendants’ liability depended upon the extent of their undertaking. 

Osco asserts that the court in 
Frye
 determined that a pharmacist was still protected by the learned intermediary doctrine even though the pharmacist offered a warning to a consumer of a drug’s dangerous propensities.  To support this assertion Osco relies on a statement made by the 
Frye
 court, in 
dicta
.  The statement followed the court's rejection of the plaintiff’s argument that the pharmacist’s placement of a "drowsy eye" label on the prescription drug container might mislead a consumer into believing that drowsiness was the only side effect of the drug.  The court stated:

"In our opinion, consumers should principally look to their   prescibing physician to convey the appropriate warnings regarding drugs, and it is the prescribing physician's duty   to convey these warnings to patients."  
Frye
, 153 Ill. 2d at  34.

In so stating, the court made no reference to the learned intermediary doctrine.  Given the context in which the statement was made, we are not persuaded that the statement indicated that the court had concluded that a pharmacist is protected by the learned intermediary doctrine even if the pharmacist voluntarily undertakes to warn a consumer of some side effects.

Other portions of the court’s opinion actually support an opposite conclusion.  In particular, the court’s explanation of the voluntary undertaking theory of liability and its citation of section 323 of the Restatement (Second) of Torts (Restatement (Second) of Torts §323 (1965)), which espouses that theory (see 
Frye
, 153 Ill. 2d at 32), suggest that the  court believed that, once a pharmacist voluntarily undertook to warn a consumer of the dangerous side effects of a prescription drug, the pharmacist removed himself from the protection of the learned intermediary doctrine, thereby becoming liable for any harm to the consumer that resulted from the pharmacist's negligent performance of his voluntary undertaking.  We believe the 
Frye
 opinion implies that the learned intermediary doctrine does not apply once a pharmacist voluntarily undertakes to warn a consumer of a drug’s dangerous propensities.  Nonetheless, under 
Frye
, the duty the pharmacist assumes is limited to the extent of the undertaking, which is correlative to the learned intermediary doctrine’s premise that the patient is dependent on the physician’s rather than the pharmacist’s advice and warnings.  We believe 
Frye
 is determinative in the present case. 

Plaintiffs contend that, by voluntarily undertaking to warn of certain side effects of Daypro, Osco assumed a duty to warn of all side effects of the drug.  In 
Frye
, the pharmacist affixed to the patient's prescription bottle a label warning that the medication Fiorinal could cause drowsiness.  This was depicted by a label showing a drowsy eye and the statement "May Cause Drowsiness."  No other labels warning of any other potential side effects were affixed to the container.  The plaintiff alleged that the defendants, the pharmacist and pharmacy, failed to adequately warn of the dangerous side effects of Fiorinal because the warning label should have warned that anyone taking the drug should avoid the use of alcohol.  The consumer allegedly died from the combined use of alcohol and Fiorinal.  

Plaintiffs argued that, based on the theory of negligent performance of a voluntary undertaking, the defendants had a duty to warn the decedent of all potential side effects of Fiorinal once they chose to warn him of the drug's propensity to cause drowsiness.  The supreme court disagreed, finding that the defendants' duty of care was limited to the extent of their undertaking.  
Frye
, 153 Ill. 2d at 33.  As the defendants undertook to warn the decedent that Fiorinal may cause drowsiness, that constituted the extent of their undertaking and it was that undertaking that defendants were obliged to perform with reasonable care.  153 Ill. 2d at 34.  

The supreme court determined that its construction of the defendants' voluntary undertaking was supported by public policy.  The court explained, stating that "if we were to hold that by choosing to place the 'drowsy eye' label on [the decedent's] prescription container defendants were assuming the duty to warn [the decedent] of all of Fiorinal's side effects, we believe that pharmacists would refrain from placing any warning labels on containers."  153 Ill. 2d at 33.  The court concluded that this result would have the effect of depriving consumers of any warnings  that might be beneficial.  We agree with the supreme court's rationale.  

Relying primarily on the fact that in 
Frye
 the pharmacist undertook only to warn of one possible side effect whereas, here, Osco listed various side effects, plaintiffs argue that the present case is distinguishable from 
Frye
.  Plaintiffs assert that the language on Osco's information sheet regarding whether there were any side effects to Daypro indicated an intent to describe all side effects and, therefore, the scope of Osco's undertaking was greater than that of the defendants in 
Frye
.  

In 
Frye
 the court determined that the duty of care to be imposed under the voluntary undertaking theory of liability was limited to the extent of the undertaking.  In other words, the duty that the 
Frye
 court imposed upon pharmacists was that, when they warned of a possible side effect, the information provided should be accurate.  In 
Frye
 one of the side effects of Fiorinal was that it caused drowsiness.  Therefore, placing the "drowsy eye" label on decedent's container was a proper warning and constituted the extent of the defendants' undertaking that they were obligated to perform with reasonable care.  

In the present case, plaintiffs did not allege that the warnings provided by Osco were inaccurate but, rather, that Osco failed to warn of other side effects, 
i.e.
, possible renal failure or injury to kidneys.  Under 
Frye
 the side effects listed by Osco constituted the extent of its undertaking.  Had those warnings been inaccurate, 
e.g.
, had the information sheet stated, "No need to report eye/ear problems, change in urine color, bloody stools, difficulty breathing, mental changes," causing the consumer to ignore any of the warnings and, as a result, to suffer injury, Osco would be liable for performing its voluntary undertaking negligently.  However, such is not the situation here.  

In the interest of the consumer, Kasin, Osco provided several possible side effects of Daypro on its information sheet.  By voluntarily undertaking to list some of the drug's side effects, Osco did not assume a duty to list all possible side effects.  Concluding otherwise would ignore the public policy considerations pointed out in 
Frye
 and would deter pharmacies from providing any  information at all
.  Illinois case law has consistently held that public policy considerations may be taken into account by a court when determining if a duty has been voluntarily undertaken.  
Brown v. Walker Nursing Home, Inc.
, 307 Ill. App. 3d 721, 726 (1999).

As we find that Osco did not voluntarily assume a duty to reveal all possible side effects of Daypro when it listed some of the side effects, plaintiffs cannot establish a foundational element of their negligence case and, therefore, summary judgment in Osco's favor was proper.  

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed. 

McLAREN and COLWELL, JJ., concur.