In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2906

JOHNNY WELLS,

*Plaintiff-Appellant*,

*v.*

LEE RYKER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 2536—**Elaine E. Bucklo**, *Judge.*

ARGUED SEPTEMBER 24, 2009—DECIDED JANUARY 6, 2010

Before POSNER, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* On the morning of June 22, 1999, Johnny Wells flagged down a Chicago city bus shortly after it had left a stop. As the driver let Wells on the bus, one of the passengers, Belinda Smith, frantically asked the driver to let her off. She ran from the back of the bus with Wells in hot pursuit. Gary Harris who, moments before, had walked Smith to the bus stop, saw that she was being pursued by Wells and moved to intervene. Wells stabbed Harris in the left shoulder as he tried to defend Smith and stabbed Smith in the back multiple times,

puncturing her lung, after Wells pushed her to the ground. At trial, Smith and Harris both testified that Wells screamed, "Bitch, I told you I was going to kill you," as he stabbed Smith.

It turns out that Wells was a former boyfriend of Smith's, that he had been stalking and threatening to kill her, and that Smith had previously obtained a restraining order against Wells. Unsurprisingly, a jury convicted Wells of two counts of aggravated battery and one count of attempted murder; but the jury acquitted him of trying to murder Harris. Both before and during trial, Wells expressed continued unhappiness with his counsel, and several times had to be coaxed into accepting his counsel's assistance. After Harris and Smith testified, Wells stood up in court and declared that they had perjured themselves.

He argues the same thing (albeit in a more decorous manner) in the habeas petition before us. But Wells notably does not argue that he did not stab Smith and Harris, that he had not previously threatened Smith, or that he did not stab Smith in the back as he chased her down the street. Instead, he claims that his victims perjured themselves when they said that he shouted, "Bitch, I told you I was going to kill you" as he stabbed Smith and that his lawyer should have impeached them with allegedly inconsistent prior statements. We do not see how Wells can possibly establish that his counsel's decision constituted sufficient prejudice to his case for an ineffectiveness of counsel claim, but we must first address the potential jurisdictional bar that may prevent us from reaching the merits of the petition.

The jurisdictional thorniness arose after the district court denied Wells's habeas petition on the merits. The district court issued its judgment and order on May 16, 2008. Wells, through appointed counsel, filed a request for an extension of time on June 13, 2008, to file a motion for a certificate of appealability or a motion for reconsideration. The question is whether this motion for an extension was sufficient to preserve our jurisdiction to hear the case. Wells's actual notice of appeal was filed July 29, 2008, almost a month and a half after the 30-day cutoff.

Federal Rule of Appellate Procedure 3(c) dictates that a notice of appeal must "(A) specify the party or parties taking the appeal . . . (B) designate the judgment, order, or part thereof being appealed . . . and (C) name the court to which the appeal is taken" and directs that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal . . . " The time limit of 30 days for the notice of appeal in a habeas case is established by Fed. R. App. P. 4(a) because a petition seeking a writ of habeas corpus is technically a civil proceeding. *See Holmes v. Buss*, 506 F.3d 576, 578 (7th Cir. 2007). While the 30-day time limit for the filing of a notice of appeal is a jurisdictional requirement, *see Bowles v. Russell*, 551 U.S. 205, 209-10 (2007), the Supreme Court has held that courts should liberally construe the rule to accept jurisdiction if a party files the "functional equivalent" of a notice of appeal, *Smith v. Barry*, 502 U.S. 244, 248 (1992). The purpose of the notice of appeal requirement "is to ensure that the filing provides sufficient notice to other parties and the courts. Thus, the notice afforded by a document . . .

determines the document's sufficiency as a notice of appeal." *Id.* (citation omitted).

Wells's motion in this case was captioned "Petitioner's Motion for Extension of Time to File a Motion for Certificate of Appealability or a Motion for Reconsideration." We note, at the outset, that the extension of time to seek a motion for reconsideration was not sufficient to toll the 30-day window because an extension of a motion under Fed. R. Civ. P. 59(e) is forbidden by Fed. R. Civ. P. 6(b)(2). *See Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 182 (7th Cir. 1984). The sole question, therefore, is whether a motion for extension of time to file the certificate of appealability is sufficient to serve as the functional equivalent of a notice of appeal.

We have held that at least in some circumstances a motion for an extension constitutes a notice of appeal. *Listenbee v. City of Milwaukee*, 976 F.2d 348, 350-51 (7th Cir. 1992). Similarly, we have held that an application for a certificate of probable cause (the precursor to the certificate of appealability) from the district court satisfies the notice of appeal requirement. *Bell v. Mizell*, 931 F.2d 444, 444-45 (7th Cir. 1991) (per curiam); *see also Marmolejo v. United States*, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam). We must determine whether a combination of the two, a motion for an extension of time in which to seek a certificate of appealability, is too attenuated from the formal requirements of Rule 4 to provide the requisite notice to the appellee.

One may wonder why the motion for extension of time, which was granted, did not toll the 30-day limit until the

end of the extension period, thus making Wells's request for a certificate of appealability, which was also granted, within that window a sufficient vehicle to establish appellate jurisdiction. But it's important to remember that a certificate of appealability is only a functional equivalent of a notice of appeal; it was still incumbent on Wells to file a notice of appeal during the 30-day window because he never tried to extend the time to file a notice of appeal. These waters are muddy; it's unclear why any habeas petitioner in our circuit would need to file a notice of appeal if he also requests a certificate of appealability within 30 days—each has been construed in this circuit as its counterpart. *See* 7th Cir. R. 22(b)(2); *see also Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008); *Bell*, 931 F.2d at 444. (Of course, a petitioner filing only a notice of appeal is hard-pressed to make the requisite showing for a certificate of appealability. *See West v. Schneiter*, 485 F.3d 393, 394-95 (7th Cir. 2007).) So, why should an extension of time to seek a certificate not also extend the time to file a notice of appeal? We need not reach this issue in light of our determination that the motion for an extension of time to seek a certificate of appealability in this instance suffices to serve as the functional equivalent of a notice of appeal.

Wells argues that his motion served as the functional equivalent of a notice of appeal because it specified the party taking the appeal and the order being appealed, and, while it did not specify the court to which the appeal is being taken, we have allowed appeals where the "intention to appeal to a certain court may be inferred from the notice and the defect has not misled the appellee." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1125 (7th Cir. 1996).

Here, there is no allegation that the appellee was misled and the intent to appeal to this court is obvious—the term "certificate of appealability" necessarily refers to an appeal to the relevant court of appeals. *See* 28 U.S.C. § 2253 (allowing review of a final order "by the court of appeals for the circuit in which the proceeding is held" only if a "circuit justice or judge issues a certificate of appealability"); *cf. United States v. Musa*, 946 F.2d 1297, 1301 (7th Cir. 1991) (concluding that a notice of appeal conveyed fair notice, even though it specified the incorrect circuit court of appeals to which the appeal was to be taken).

The state argues that the problem is not that the motion did not convey to which court Wells intended to appeal but that it did not convey any intention to appeal at all, and in fact indicated an intention to do the opposite—seek reconsideration in the district court. As we noted above, the extension sought on the motion for reconsideration was unavailable, so this motion could only act as a motion for an extension of time to seek a certificate of appealability. And that aspect of the motion conveyed the needed information to the warden and the State of Illinois that an appeal would be taken to this court. *See Smith*, 502 U.S. at 248 ("[T]he notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal."). As we mentioned above, the motion for an extension of time to request a certificate of appealability is an attenuated example of a functional equivalent to a notice of appeal, and probably lies at the outer limit of what motions may suffice under *Smith v. Barry*. But, we are

confident that the appellant's motion in this case served adequate notice under the Rule. Accordingly, we have jurisdiction to hear Wells's appeal.

Having said that, the appeal is meritless. As we indicated above, the only issue is whether Wells was deprived of the effective assistance of counsel at trial. The peg he hangs his claim on is an alleged inconsistency in the trial testimony of Smith and Harris, who both testified that he shouted, "Bitch, I told you I was going to kill you," and their police statements which do not report any such damning utterance during the attack. Wells argues that his counsel should have impeached both witnesses with their police statements.

Two issues were raised by the respondent to counter Wells's ineffective assistance argument. First, Smith lay in a hospital for five days suffering from her punctured lung; her statement was taken during this stay. Any inconsistency in her testimony could have easily been explained to the jury as a product of the stress under which it was given. The ease of explanation mitigates any prejudicial impact of the alleged failure to impeach. Second, Illinois law provides that a witness can only be impeached by a prior inconsistent statement that is "in her own words or substantially verbatim." *People v. Hood*, 593 N.E.2d 805, 812 (Ill. App. Ct. 1992). The respondent argues that the statements at issue here do not meet this standard. For his part, Wells argues that the statements at issue here would have passed muster for impeachment purposes under Illinois law. *See People v. Bassett*, 307 N.E.2d 359, 362-63 (Ill. 1974) (holding that

rough notes of police interviews should be provided to defendant for impeachment purposes).

We can safely lay those issues aside, because the case can be decided simply on the grounds that any alleged deficiency in Wells's counsel's performance on this issue could in no way be prejudicial to the outcome of the trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("[A showing of prejudice] requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."). First degree murder in Illinois requires an intent to kill or do great bodily harm to an individual. 720 Ill. Comp. Stat. 5/9-1(a). Deprived of the challenged testimony, a rational jury surely would have convicted Wells on the uncontested facts that he stabbed his ex-girlfriend in public in broad daylight, that he stabbed her multiple times in the back after chasing her down, that he stalked and had previously threatened to kill her, and that he only stopped stabbing her after a passing car tried to run him down. The requisite intent for first degree murder was thus independently and amply demonstrated absent the challenged testimony. "Intent may be inferred from the character of the act. It is not necessary to directly prove that defendant had the intent to murder; all that needs to be shown is that defendant voluntarily and willfully committed an act, the natural tendency of which was to cause death or great bodily harm." *People v. Lee*, 628 N.E.2d 436, 440 (Ill. App. Ct. 1993) (citation omitted). Accordingly, we AFFIRM the district court.