THIRD DIVISION
August 25, 2010

No. 1-09-1297

| | | |
|---|---|---|
| CHARLES S. DiGIOVANNI as Special Administrator of the Estate of Laverne DiGiovanni, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04 L 3580 |
| ALBERTSON'S, INC., d/b/a Osco Drugs, | ) ) | |
| Defendant-Appellee | ) ) ) | Honorable Daniel M. Locallo, Judge Presiding. |
| (Sachidananda D. Shastri and Gericare, Ltd., | ) ) | |
| Defendants). | ) | |

JUSTICE STEELE delivered the opinion of the court:

This appeal arises from an order of the circuit court dismissing defendant Albertson's, Inc., d/b/a Osco Drugs (Osco), from a suit filed by plaintiff, Charles DiGiovanni, as special administrator of the estate of Laverne DiGiovanni (the Estate), with prejudice on the basis that Osco had no duty to warn either the physician or the patient of a potential drug-to-drug interaction under the learned intermediary doctrine. For the following reasons, we affirm.

BACKGROUND

The decedent, Laverne DiGiovanni, was a longtime patient of defendant, Dr. Sachidananda D. Shastri. For 10 years, he had prescribed lithium to Laverne for her probable manic depressive psychosis. On January 16, 2003, Dr. Shastri prescribed a drug called Tenoretic to treat Laverne's high blood pressure. The prescription for the Tenoretic was filled on January 20, 2003, at Osco. However, prior to filling the prescription, the pharmacist called Dr. Shastri.

According to the pharmacist, Dr. Jonathan Huynh, the pharmacy computer indicated that there would be an interaction between lithium and Tenoretic. The interaction between the two drugs could cause lithium toxicity. When Dr. Huynh called Dr. Shastri to inform him of the interaction, Dr. Shastri told Dr. Huynh to fill the prescription and that he would monitor the patient. The conversation was memorialized in a note and placed in Laverne's file. However, when Dr. Shastri was questioned during his deposition about a conversation with Dr. Huynh, he indicated that he had no recollection of the conversation.

A prescription for lithium was subsequently issued by Dr. Shastri for Laverne, which was filled on January 27, 2003, by another Osco pharmacist, John Glowacki. Prior to filling the prescription, Glowacki noticed the handwritten note in Laverne's file indicating that the doctor was going to monitor the patient after receiving notice of the interaction between lithium and Tenoretic. Glowacki did not call Dr. Shastri prior to filling the lithium prescription. Laverne became ill and was subsequently hospitalized on February 3, 2003. She later died, allegedly from lithium toxicity.

The Estate filed a wrongful death action against his wife's longtime doctor, Dr. Shastri, Gericare, Ltd. (Gericare), and Osco. The Estate alleged, in part, that Osco failed to warn of the interaction between Tenoretic and lithium. Osco filed a motion for summary judgment, which was denied on March 10, 2008. The Estate subsequently moved for partial summary judgment, claiming there was a duty to warn on January 27, 2003, before filling the lithium prescription and there was no dispute that a warning had not been issued on that date. The trial court ruled on June 17, 2008, that Osco's duty to warn started to run on January 20, 2003, and it was question of

fact for the jury whether the warning on January 20, 2003, by Dr. Huynh to Dr. Shastri was sufficient to cover the refilling of the lithium prescription on January 27, 2003.

On February 4, 2009, the case was docketed for a jury trial. Osco presented a motion *in limine*, alleging that it was under no duty to warn either the physician or the patient of a drug interaction. The trial court took Osco's motion under advisement. The following day, February 5, 2009, Dr. Shastri and Gericare were dismissed from the case pursuant to a settlement agreement. Subsequently, the trial court dismissed Osco from the case, reversing its ruling of June 17, 2008, and finding that Osco had no duty to warn under the learned intermediary doctrine and that Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179 (2002), was distinguishable. The trial court filed a written memorandum opinion on February 13, 2009, which further explained its ruling. The Estate's motion for reconsideration was denied. This timely appeal followed.

DISCUSSION

The issues raised on appeal are: (1) whether the trial court correctly held that the learned intermediary doctrine did not require Osco to warn the customer of a potential drug interaction; and (2) whether the trial court correctly concluded that Happel was distinguishable from the instant case.

The order dismissing Osco from the suit was a reversal of the trial court's initial ruling on Osco's motion for summary judgment. In an appeal from the grant of summary judgment, we conduct a *de novo* review. Pekin Insurance Co. v. Estate of Goben, 303 Ill. App. 3d 639, 642 (1999). In reviewing a grant of summary judgment, this court considers anew the facts and the applicable law and determines whether the circuit court was correct in its ruling. Frigo v. Motors

Insurance Corp., 271 Ill. App. 3d 50, 56-57 (1995). Although it is recognized that summary judgment is a drastic means of disposing of litigation, it is appropriate in cases where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Pekin Insurance, 303 Ill. App. 3d at 642.

The Estate first contends that the learned intermediary doctrine does not insulate Osco from its legal duty to warn of a deadly drug interaction. The learned intermediary doctrine provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 517 (1987); Fakhouri v. Taylor, 248 Ill. App. 3d 328, 330 (1993). As a result, the doctrine prevents imposing a duty upon drug manufacturers to warn patients directly. Kirk, 117 Ill. 2d at 519; Fakhouri, 248 Ill. App. 3d at 330. The doctrine has also been applied to exempt pharmacies and pharmacists from giving warnings to patients. See Eldridge v. Eli Lilly & Co., 138 Ill. App. 3d 124 (1985); Leesley v. West, 165 Ill. App. 3d 135, 137-38 (1988); Fakhouri, 248 Ill. App. 3d at 332-33.

In Eldridge, plaintiff brought a wrongful death suit against the pharmacy that had filled the decedent's prescriptions. Plaintiff charged the pharmacy with negligence in that it had filled the prescriptions for quantities of the drug beyond those normally prescribed and had failed to warn the decedent's doctor that the prescriptions were for an excessive quantity. The decedent died from an overdose of the drug. Eldridge, 138 Ill. App. 3d at 125-26. The appellate court refused to impose a duty to warn upon pharmacists, noting that drug manufacturers had a duty to

warn doctors of the dangerous propensities of drugs and the doctor acts as a learned intermediary on behalf of the consumer. Eldridge, 138 Ill. App. 3d at 127. Because the propriety of a prescription depends not only on the propensities of the drug, but also on the patient's condition, the court reasoned that to impose such a duty on pharmacists would "require the pharmacist to learn the customer's condition and monitor his [or her] drug use. To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license." Eldridge, 138 Ill. App. 3d at 127.

Similarly, in Leesley, plaintiff filed suit against her doctor, a pharmacy, and a pharmaceutical company for damages resulting from gastrointestinal bleeding allegedly caused by a prescription drug manufactured by the pharmaceutical company, prescribed by her doctor, and supplied by the pharmacy. Plaintiff charged the pharmacy with negligence in that it failed to warn her of the drug's possible adverse side effects. Leesley, 165 Ill. App. 3d at 137. The appellate court refused to subject pharmacists to liability for failure to give warnings that were not requested by the physician to be given to the patient, and noted that imposing such a duty violated the learned intermediary doctrine. Leesley, 165 Ill. App. 3d at 142. Applying the doctrine, the appellate court found that it could not place a greater burden on pharmacists than that which was placed on the drug's manufacturer and concluded that the extent of warnings to patients concerning prescription drugs is within the discretion of the physician. Leesley, 165 Ill. App. 3d at 143.

A similar conclusion was reached in Fakhouri. In Fakhouri, a wrongful death action was brought against pharmacists who filled a prescription that allegedly caused the customer to

overdose. Fakhouri, 248 Ill. App. 3d at 329-30. The court found that it was "illogical and unreasonable" to impose a greater duty on the pharmacist who properly fills a prescription than that which is imposed on the drug's manufacturer. Fakhouri, 248 Ill. App. 3d at 333.

We reach the same conclusion based upon the circumstances presented by the case at bar. Here, Laverne's longtime physician, Dr. Shastri, prescribed Tenoretic to treat high blood pressure while she was already taking lithium for manic depression. The two drugs were apparently known to have a negative interaction, and the computer indicated so when the Tenoretic prescription was being filled. The record indicates that the pharmacist called the physician prior to filling the prescription regarding the potential interaction, and the physician indicated that he would monitor Laverne. Making a notation in the file, the pharmacist filled the prescription for the Tenoretic. When the lithium prescription was refilled, the pharmacist saw the note regarding notification to the physician about the interaction and that the physician would monitor the patient.[1] We find that the pharmacist properly filled the prescriptions that the physician wrote, took notice of the warning in the system regarding a possible interaction between the two drugs, and notified the physician of the potential interaction prior to filling the prescription. The physician then indicated that he would monitor the usage, so the pharmacist filled the prescription and made a notation. Under these circumstances, as in Eldridge, Leesley, and Fakhouri, we find that the pharmacist was under no duty to warn the customer of the possible

---

[1] The record does not indicate what type of monitoring was done. Since the case against the physician was settled, it is not a part of the discussion here.

6

interaction between the two drugs under the learned intermediary doctrine. To hold otherwise would impose a greater duty on the pharmacist than on the drug's manufacturer, as the duty of extending warnings to patients concerning prescription drugs belongs with physicians.

The Estate, however, contends that the trial court erroneously found the holding in Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179 (2002), was distinguishable from the circumstances presented in the case at bar. We disagree.

In Happel, the supreme court framed the issue as "whether a pharmacy has a duty to warn about a known drug contraindication where the pharmacy is aware of a customer's drug allergies and knows that the medication prescribed by the customer's physician is contraindicated for a person with those allergies." Happel, 199 Ill. 2d at 180-81. Plaintiff was allergic to aspirin, ibuprofen and acetaminophen and experienced a severe reaction after taking Toradol, a pain reliever prescribed by her physician. Happel, 199 Ill. 2d at 180-81. Toradol should not be taken by persons who are allergic to aspirin and other nonsteroidal anti-inflammatory drugs. Happel, 199 Ill. 2d at 180-81. Plaintiff's physician knew of her drug allergies, but was unaware of Toradol's contraindications for patients allergic to aspirin. Happel, 199 Ill. 2d at 181. Prior to having the prescription for Toradol filled, plaintiff had gone to the Wal-Mart pharmacy approximately six times to have other prescriptions filled. Each time she went to the pharmacy, pharmacy workers asked her if she had any drug allergies, and each time she told them she was allergic to aspirin, ibuprofen and acetaminophen. Happel, 199 Ill. 2d at 181-82. The pharmacy manager testified that it was the pharmacy's policy to ask customers about their known allergies before dispensing medication to alert the pharmacist to any drug interactions or allergies, and that

plaintiff's allergy information was in the computer and available when the Toradol prescription was filled. Happel, 199 Ill. 2d at 182. There was also testimony presented at trial that if the Toradol information was in the computer, a "drug interaction" warning would have flashed, requiring a call to the physician and a system override before the prescription could be filled. Happel, 199 Ill. 2d at 182-83. The pharmacist could not remember phoning the physician. When the prescription was picked up, plaintiff was again asked about any drug allergies. Happel, 199 Ill. 2d at 182-83. Plaintiff became ill after taking the Toradol, and subsequently, she and her husband filed suit against her physician and the pharmacy. Happel, 199 Ill. 2d at 183-84. The court found a narrow duty to warn outside of the learned intermediary doctrine under the circumstances presented in the case because: (1) it was undisputed that the pharmacy was aware of both the patient's drug allergies and that the drug was contraindicated by persons such as plaintiff who were allergic to aspirin (superior knowledge); (2) the burden was minimal, as it required the pharmacist to phone the physician and notify him or her of the contraindication or notify the patient; and (3) there were no real consequences to Wal-Mart as it already had a practice of notifying physicians of a patient's drug allergies. Happel, 199 Ill. 2d at 187-88.

The same circumstances are not present in this case. Here, Osco did in fact notify the physician of the potential drug interaction between Tenoretic and lithium prior to filling the prescription and made such a notation in her file, whereas the pharmacy in Happel did not. Even applying the holding of Happel to the instant case, Osco acted within its duty by notifying Laverne's physician of the potential drug interaction before filling the prescription because the Happel court indicated that the duty was discharged upon notification to the physician or the

8

patient.  <u>Happel</u>, 199 Ill. 2d at 187.  Accordingly, the trial court did not err in finding <u>Happel</u>

distinguishable from the instant case.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.

| Please Use Following Form:<br><br>Complete TITLE of Case | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case)<br><br>CHARLES S. DiGIOVANNI, as Special Administrator of the Estate of Laverne DiGiovanni, Deceased,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>ALBERTSON'S, INC., d/b/a Osco Drugs,<br><br>Defendant-Appellee<br><br>(Sachidananda D. Shastri and Gericare, Ltd.,<br><br>Defendants). |
|---|---|
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-09-1297<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>August 25, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE STEELE delivered the opinion of the court:<br><br>Murphy, P.J., and Quinn, J.,       concur<br><br>dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>Circuit Ct. of Cook County, Law Div.<br>The Honorable   Daniel M. Locallo   , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br>Attorneys for **Plaintiff-Appellant**:   Spina, McGuire & Okal, P.C., of Elmwood Park, IL<br>(Timothy H. Okal, of Counsel)<br><br>Attorneys for **Defendant-Appellee:**   Cassiday Schade LLP, of Chicago, IL<br>(David C. Van Dyke and Trisha K. Tesmer, of Counsel)<br><br>Attorneys for **Amicus Curiae**:   National Association of Boards of Pharmacy, of Mount Prospect, IL<br>(Moira Gibbons and Melissa M. Madigan, of Counsel) |