In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3462

CATHY M. WALTON,

*Plaintiff-Appellant,*

*v.*

BAYER CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cv-10217-DRH-PMF—**David R. Herndon**, *Chief Judge.*

ARGUED MARCH 31, 2011—DECIDED MAY 23, 2011

Before CUDAHY, POSNER, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, a citizen of Illinois, brought suit in an Illinois state court against a number of Bayer affiliates, all citizens of states other than Illinois, plus Niemann Foods, Inc., an Illinois citizen. The suit charges the defendants with violating Illinois tort law by failing to warn of dangerous side effects of Yazmin, a prescription oral-contraceptive drug manufactured by a German affiliate of the Bayer defendants (the manu-

facturer is not a defendant) and bought by the plaintiff at a pharmacy operated by Niemann; she claims to have been seriously injured by the side effects. Despite the absence of complete diversity of citizenship because Niemann was joined as a defendant, the Bayer defendants removed the case to federal district court, arguing that the plaintiff had improperly joined Niemann to eliminate complete diversity of citizenship—a precondition to removing this case to federal court because there is no federal-law claim. The plaintiff asked the district judge to remand the case to state court. He refused, instead dismissing Niemann as a defendant, with prejudice, thus restoring complete diversity. The plaintiff seeks reversal of the judge's order.

The defendants challenge our jurisdiction. They point out that the appeal is not from the order dismissing Niemann and denying the plaintiff's motion to remand the case to state court. That order did not end the litigation in the district court, and so was an interlocutory order—and not an *appealable* interlocutory order either. The plaintiff hadn't asked the district court to make the dismissal of Niemann a partial final judgment appealable under Fed. R. Civ. P. 54(b) or invoked any other exception to the final-decision rule (28 U.S.C. § 1291). The appeal is not from the order that the plaintiff wants us to appraise but from the district court's subsequent dismissal of the entire suit, with prejudice, as punishment for her failure to comply with the district judge's subsequent order to respond to a discovery demand by the defendants. Fed. R. Civ. P. 37(b)(2)(A)(v); *Société Internationale pour Participa-*

*tions Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 206-08 (1958); *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). She ignored that order because she'd abandoned the litigation when the judge refused to remand the case to state court.

The dismissal of the entire suit as a discovery sanction was of course a final and therefore appealable judgment. But the defendants, citing *Sere v. Board of Trustees*, 852 F.2d 285, 288 (7th Cir. 1988), argue that a plaintiff should not be permitted to convert an interlocutory order to a final judgment by walking away from the litigation. *Sere*, however, was a peculiar case that bears only superficial resemblance to this one. The plaintiff had advanced two claims. The district court dismissed one under Rule 12(b)(6) and the case continued on the other claim until the plaintiff flouted a discovery order, whereupon the district court entered a final judgment dismissing the entire case with prejudice. The plaintiff argued on appeal that this punitive dismissal should have been limited to the second claim, thus allowing him to appeal from the dismissal of the first. We rejected the argument, 852 F.2d at 288-89, noting that the violation of the discovery order had deprived the defendant of discovery relating to the first claim as well as to the second.

There is nothing like that here. Nor is this a case in which a litigant tries to get an interlocutory appeal on one claim by seeking dismissal of another one, without prejudice, that he plans to reinstate—an impermissible tactic for circumventing the final-decision rule. E.g., *Ash*

*v. Cvetkov*, 739 F.2d 493, 497 (9th Cir. 1984). Because our plaintiff wagered her entire claim on being proved right about jurisdiction, considerations of judicial economy justified immediate appellate review. For had the plaintiff complied with the discovery order and continued to prosecute her case in the district court, and lost, and then had successfully appealed on the ground that the district court lacked jurisdiction, the case would have had to be remanded to the state court—and since the basis of the remand would have been an absence of federal jurisdiction over the suit, the parties would have had to relitigate the case from scratch. *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034-35 (7th Cir. 2000).

So we have jurisdiction over the appeal, but is there federal jurisdiction over the case? The plaintiff makes three arguments that there isn't. The first is that she has not alleged that her damages exceed $75,000, only that they exceed $50,000, and so the case does not satisfy a prerequisite of federal diversity jurisdiction. But the litany of injuries she claims to have sustained, which include but are not limited to "future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences," makes clear that she is seeking damages in excess of $75,000. A plaintiff can defeat removal of a diversity case by irrevocably committing (before the case is removed) to accepting no

more than $75,000 in damages, *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 2011 WL 1206184, at *3 (7th Cir. Apr. 1, 2011), no matter how great her actual damages. But needless to say the plaintiff has made no such commitment, as that would make her suit not worth the expense of litigating it.

Her second argument is that the defendants, in violation of 28 U.S.C. § 1446(a), failed to include in their removal papers, within the 30-day deadline for filing a petition to remove, the summonses that the plaintiff had served on them in the state court. A "defect in the removal procedure" normally requires remanding a case that has been removed under section 1446(a). See 28 U.S.C. § 1447(c); *In re Continental Casualty Co.*, 29 F.3d 292, 293-94 (7th Cir. 1994). But the defendants added the summonses to their removal papers five days after the deadline, and there is no suggestion that the plaintiff, the district judge, the state court, or anyone or anything else was harmed by the delay. The 30-day deadline is not jurisdictional, *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 368-69 (7th Cir. 1993); *Northern Illinois Gas Co. v. Airco Industrial Gases*, 676 F.2d 270, 273 (7th Cir. 1982); *Music v. Arrowood Indemnity Co.*, 632 F.3d 284, 287-88 (6th Cir. 2011)—and even if it were, that wouldn't make the plaintiff's stumble fatal. The deadlines for filing notices of appeal from a district court to a court of appeals *are* jurisdictional; and yet defects in the notice that are inconsequential in the sense of incapable of misleading or otherwise harming anyone do not deprive the appellate court of jurisdiction. *Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *Wells v. Ryker*, 591 F.3d 562,

565 (7th Cir. 2010); *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 62-63 (2d Cir. 2010); see also 28 U.S.C. § 1653 ("defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). This is true even if the notice of appeal is "error-ridden." *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).

No more does a totally inconsequential defect in removal papers deprive the district court of jurisdiction over a case removed to it. *Riehl v. National Mutual Ins. Co.*, 374 F.2d 739, 742 (7th Cir. 1967); *Cook v. Randolph County*, 573 F.3d 1143, 1149-50 (11th Cir. 2009); see also 14C Charles A. Wright et al., *Federal Practice and Procedure* § 3733, pp. 635-41 (4th ed. 2009). Remand would be a disproportionate sanction for a trivial oversight, and when judges measure out sanctions they strive for proportionality. *Roughneck Concrete Drilling & Sawing Co. v. Plumbers' Pension Fund, Local 130*, 2011 WL 1304900, at *6 (7th Cir. Apr. 7, 2011); *Montaño v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008); *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008).

The plaintiff's third, and principal, ground for remanding this case to state court is absence of complete diversity of citizenship. She makes two alternative arguments. The first is that the judge erred in dismissing Niemann as a defendant (if Niemann is retained, diversity is not complete); the second argument is that if he didn't err in this respect the case falls into an exception to an exception to the requirement of complete diversity: the "common defense" exception to the "fraudulent joinder" exception to that requirement.

Suppose removing defendants argue that the nondiverse defendant was joined simply to defeat removal, as might be inferred from a demonstration that the claim against that defendant had no possible merit. This is called "fraudulent joinder" and bars remand to state court, which is why we describe it as an exception to the requirement of complete diversity. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 n. 9 (7th Cir. 2009); *Schwartz v. State Farm Mutual Automobile Ins. Co.*, 174 F.3d 875, 878-79 (7th Cir. 1999); *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Like many legal doctrines, "fraudulent joinder" is misnamed, since, as the cases we've just cited point out, proof of fraud, though sufficient, is not necessary for retention of federal jurisdiction—all that's required is proof that the claim against the nondiverse defendant is utterly groundless, and a groundless claim does not invoke federal jurisdiction, *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974); *McCurdy v. Sheriff of Madison County*, 128 F.3d 1144, 1145 (7th Cir. 1997), thus requiring the district judge to dismiss that defendant before the judge rules on the plaintiff's motion to remand.

Taking the first of the plaintiff's two arguments for why complete diversity is absent, we consider whether the judge was right to think that the claim against Niemann had so little merit that Niemann's joinder as a defendant was fraudulent in the sense just explained. The answer turns on the applicability to Niemann of the "learned intermediary" doctrine, a common law doctrine, in force as of 2002 in all but two states, *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016-17

(8th Cir. 2004); *In re Norplant Contraceptive Products Liability Litigation,* 215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002)—and Illinois is not one of the two. See *Kirk v. Michael Reese Hospital & Medical Center*, 513 N.E.2d 387, 392 (Ill. 1987); *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1127 (Ill. 2002). As usually formulated (the significance of the qualification "usually" will become clear shortly), the doctrine excuses the manufacturer of a prescription drug from having to warn consumers of the drug's adverse side effects; it need warn only physicians, so that armed with the warning they can make a medical decision to prescribe or not to prescribe the drug for a particular patient. E.g., *Ackermann v. Wyeth Pharmaceuticals*, 526 F.3d 203, 207 (5th Cir. 2008); *In re Prempro Products Liability Litigation*, 514 F.3d 825, 830 (8th Cir. 2008); *Pittman v. Upjohn Co.,* 890 S.W.2d 425, 429 (Tenn. 1994). The prescribing physician is the "learned intermediary"—the medical professional who, equipped with the knowledge imparted to him by the drug's manufacturer, determines, weighing benefit against risk, the drug's suitability for a particular patient.

Niemann is (so far as bears on this case) a pharmacy, and the plaintiff argues that therefore, since it is not a manufacturer, it is not insulated by the doctrine from liability for failing to warn her of Yazmin's side effects, as the district judge thought. But the doctrine's logic applies to pharmacies when they sell prescription drugs (like Yazmin), though applies differently from its application to manufacturers. Pharmacies (and normally other sellers in the chain of distribution that runs from the

manufacturer to the ultimate consumer) can't be expected to warn their customers of the possible defects and dangers of the prescription drugs they sell. It would be senseless, especially given drug regulation by the Food and Drug Administration and the extensive tort liability of drug manufacturers, to make pharmacies liable in tort for the consequences of failing to investigate the safety of thousands of drugs. What a pharmacy sometimes knows, however, without investigation, and the manufacturer will not know and even a treating physician may not know, is susceptibilities of particular customers of the pharmacy to the side effects of a drug that it sells them—susceptibilities because of other drugs that the pharmacy knows the customer is taking, or a pre-existing physical or mental condition (again known to it) that makes the drug contraindicated for the customer—and then it must warn either the customer or his physician. *Happel v. Wal-Mart Stores, Inc., supra,* 766 N.E.2d at 1124-25; *DiGiovanni v. Albertson's, Inc.,* 940 N.E.2d 73, 77 (Ill. App. 2010); *Hand v. Krakowski,* 89 A.D.2d 650, 651 (N.Y. App. Div. 1982). But not otherwise.

Most courts reach this result without using the term "learned intermediary." E.g., *Murphy v. E.R. Squibb & Sons, Inc.,* 710 P.2d 247, 253 (Cal. 1985); *Bichler v. Willing,* 58 A.D.2d 331, 335 (N.Y. App. Div. 1977); *Adkins v. Mong,* 425 N.W.2d 151, 152 (Mich. App. 1988); *McLeod v. W.S. Merrell Co.,* 174 So. 2d 736, 739 (Fla. 1965). Illinois courts reach the same result but call it an application of the learned-intermediary doctrine. *Happel v. Wal-Mart Stores, Inc., supra,* 766 N.E.2d at 1126; *Kasin v. Osco Drug, Inc.,* 728 N.E.2d 77, 79 (Ill. App. 2000); *Leesley v. West,* 518 N.E.2d

758, 762-63 (Ill. App. 1988), The plaintiff seems to think that Illinois can't mean it when it says it applies the doctrine to pharmacies. But the underlying principle is the same that leads other courts to limit the liability of pharmacies. The fact that it goes by a different name in Illinois is of no importance; all that's important is that in 48 states including Illinois a manufacturer or a pharmacy must warn a customer of dangers known to it of which physicians have not been warned, but not of dangers of which physicians have been warned. So if Niemann knew that the plaintiff was abnormally susceptible to a particular side effect of Yazmin, it had a duty to warn her or her physician. But she doesn't allege that the pharmacy knew anything about her susceptibility, and so it had the full protection of the learned-intermediary doctrine. So clear is this that the district court was right to invoke fraudulent joinder as a ground for dismissing Niemann from the case, with prejudice, leaving only diverse defendants.

But this brings us to the plaintiff's alternative argument for why complete diversity is absent. The nondiverse defendants, the Bayer affiliates, are distributors, like the pharmacy. If the learned-intermediary doctrine applies with equal force to them, and therefore negates a duty to warn of dangers of which they were unaware, and thus creates a defense common to all the defendants, the case has to be remanded to the state court. For, as we mentioned earlier, a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against

the diverse defendants. Especially if the claims are identical, the diverse defendants really are just arguing that the suit has no merit, period. And that is a ground not for removal but for asking the court in which the suit was filed—the state court—to dismiss the suit. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044-45 (9th Cir. 2009); *Smallwood v. Illinois Central R.R.*, 385 F.3d 568, 574-76 (5th Cir. 2004 (en banc)); *Boyer v. Snap-On Tool Corp.*, 913 F.2d 108, 112-13 (3d Cir. 1990).

But applying the common-defense exception to this case is barred by the plaintiff's allegation that the Bayer defendants concealed the existence of Yazmin's side effects. Yazmin is Bayer's drug—manufactured by one Bayer affiliate, marketed and sold in the United States by other affiliates, those named as defendants. There is no suggestion that *Niemann* concealed Yazmin's side effects from its customers; Niemann was no doubt one of the entities from which the Bayer defendants (if the charge of concealment against them has any merit) concealed the side effects. The learned-intermediary doctrine doesn't permit distributors to *conceal* a drug's adverse side effects from physicians, pharmacies, and consumers. *Kirk v. Michael Reese Hospital & Medical Center*, *supra*, 513 N.E.2d at 392-93; *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir. 1966); *Proctor v. Davis*, 682 N.E.2d 1203, 1212-13 (Ill. App. 1997); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 764 (Ky. 2004). The plaintiff's statement in her opening brief, advocating application of the common-defense doctrine, that "the Bayer defendants who are parties to this case are marketers and distributors, *the same as defendant Niemann Foods*" (emphasis added), overlooks

her own allegation that the Bayer defendants, unlike Niemann, concealed vital information about Yazmin's side effects. The learned-intermediary doctrine that shields Niemann does not shield them, and thus is not a defense common both to the diverse defendants and to the nondiverse one.

We can imagine an argument that the claim against the diverse defendants should not have been dismissed with prejudice; for all anyone knows at this stage of the litigation, it may be valid, and it might seem that the plaintiff should be allowed to press ahead, albeit in federal court, since there is no basis for a remand to state court. But she does not make this argument, and if she did it would fail. The district court's denial of her motion for a remand confronted her with a choice between, on the one hand, obtaining immediate appellate review of her jurisdictional argument by refusing to litigate in the district court and having her claims dismissed with prejudice, and on the other hand pursuing her claims to final judgment in the district court and then seeking appellate review, where she could assert her jurisdictional ground as well as any objections to the substantive merits of the district court's decision. She followed the first approach and by doing so forfeited her claims against all the defendants in the event her jurisdictional argument failed.

And had the plaintiff prevailed in this court on the basis of the common-defense doctrine, and thus succeeded in getting the case remanded to state court, her claims against the Bayer defendants in the remanded

proceeding would still be barred, for she would have run head-on into the bar of judicial estoppel. She would have prevailed in this court in getting her case remanded to state court by persuading us that those defendants were identically situated to Niemann—which if true would be a complete defense because her claim against Niemann is frivolous—only to turn around and argue in the state court that her claim against the diverse defendants was not subject to the learned-intermediary doctrine after all and so her claim against them should survive Niemann's dismissal.

A litigant is not permitted to advance a ground in one lawsuit, prevail on that ground, and in a later lawsuit against the same party seek a judgment based on a repudiation of its earlier position. *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *FCC v. Airadigm Communications, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010); *People v. Runge*, 917 N.E.2d 940, 976-77 (Ill. 2009). For reasons we don't understand, the cases are coy about defining the doctrine; typical is the statement in *New Hampshire v. Maine* that "courts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.' Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the

perception that either the first or the second court was misled.' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." 532 U.S. at 750-51 (citations omitted).

But there is only one possible doubt about the applicability of the doctrine to this case: while judicial estoppel is usually understood to require that the first litigation have been a separate lawsuit that ended in a judgment or settlement, *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998), in this case had the plaintiff prevailed the sequel would have been the transfer of an existing lawsuit to another court rather than the filing of a brand-new suit. But that should make no difference to the applicability of the doctrine. *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998). Though "usually applied to successive suits, . . . it is not so limited." *Continental Illinois Corp. v. Commissioner*, 998 F.2d 513, 518 (7th Cir. 1993) (citations omitted). Its purpose is to deter fraud in litigation, see, e.g., *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004), which is a good description of advancing a ground for relief in one stage of a

lawsuit with the undisclosed intention of arguing against it in a later stage.

If as we believe judicial estoppel would bar the plaintiff's claim against the Bayer defendants in state court were we to order the case remanded, a victory for her in the present phase of the litigation would be Pyrrhic.

AFFIRMED.