# United States Court of Appeals
## For the First Circuit

No. 22-1027

MARIO CRUZADO,

Petitioner, Appellant,

v.

NELSON ALVES, Superintendent, MCI Norfolk,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Emma Quinn-Judge, with whom Thomas Miller and Zalkind Duncan & Bernstein LLP were on brief, for appellant.

Eva M. Badway, Assistant Attorney General of Massachusetts, Criminal Bureau, with whom Andrea Joy Campbell, Attorney General of Massachusetts, and Tyler Mayo, Legal Intern, were on brief, for appellee.

December 22, 2023

**BARRON, <u>Chief Judge</u>**.  Mario Cruzado ("Cruzado") appeals from the dismissal of his federal petition for writ of habeas corpus under 28 U.S.C. § 2254.  The petition challenges his Massachusetts-law conviction for first-degree murder.  After explaining the basis for our jurisdiction over this appeal, we affirm.

## I.

Cruzado's conviction arose out of the following undisputed events.  On November 26, 2010, Frederick Allen III's ("Allen") body was found in his apartment in Boston, Massachusetts.  Allen was a gay, African-American man.  The cause of his death was strangulation and blunt-force trauma to the head.

On December 7, 2010, investigators for the Boston Police Department brought Cruzado to the police station to question him about Allen's death.  They showed Cruzado a picture of Allen, which gave rise to the following exchange:

> <u>Investigator 1 (I1):</u> Okay.  I'm going to show you a picture of a guy.  See if you've ever seen this guy before.
> <u>Cruzado (C):</u> Who's that?
> <u>I1:</u> I'm asking you.  Isn't this -- I'm asking you.  Have you ever seen this guy before?  Yes or no?
> <u>C:</u> Who . . . is that?  Just a guy?
> <u>I1:</u> No, listen to me.  Listen to me.  Have you ever seen this guy before?  Yes or no.
> <u>C:</u> He looks like a nigger to me.
> <u>I1:</u> Have you ever seen this guy before?

- 2 -

C: He looks like a nigger to me.

I1: Have you ever seen this guy right here before?

C: He looks like a nigger to me. No. He's black.

I1: No. It's a yes or no question.

C: He's black.

I1: I understand.

Investigator 2: Have you ever seen him?

I1: Yes or no?

C: Where . . . I've ever seen him? I don't know that mother fucker.

About three months later, in March 2011, Hilda Matiaz ("Matiaz"), a former girlfriend of Cruzado, told police that Cruzado had called her on December 7, 2010, to tell her about an incident in which he had met up with a friend, gone to the home of an African-American man, and then showered and fallen asleep there. Matiaz claimed that, in the account of the incident that Cruzado gave her, he awoke to the man touching his testicles and reacted by pushing the man away, putting the man in a headlock, and saying that he was "not a faggot." She further claimed that Cruzado told her that, when the man fell to the floor, Cruzado left the man's home.

In 2012, Cruzado was charged in Suffolk County Superior Court with first-degree murder for killing Allen. At the ensuing trial, the jury heard an uncensored and unredacted recording of the investigative interview that we have recounted above. The recording was submitted into evidence to show Cruzado's animus

toward African Americans and thus to show Cruzado's partial motive for killing Allen.

The jury returned a guilty verdict, and Cruzado was convicted of first-degree murder under Massachusetts law. He was sentenced to a prison term of life.

Several years later, on July 1, 2016, Cruzado filed a motion for a new trial. The motion claimed that Cruzado had received ineffective assistance of counsel and thus that his conviction violated his right to counsel under the Sixth Amendment of the U.S. Constitution.

The state Superior Court judge denied the motion on March 30, 2017. Cruzado then filed a motion for reconsideration, which was also denied.

Cruzado appealed both his conviction and the denial of his motion for a new trial. He appealed his conviction based on, among other grounds, a challenge to the state trial judge's admission of the portion of the video recording of the interview described above. Cruzado appealed his first-degree murder conviction and the denial of his motion for a new trial directly to the Massachusetts Supreme Judicial Court ("SJC") pursuant to Mass. Gen. Laws ch. 278, § 33E. See Commonwealth v. Billingslea, 143 N.E.3d 425, 439 (Mass. 2020). The SJC consolidated his appeals and denied them.

- 4 -

With respect to the admission of the recording, the SJC held that the state trial court did not abuse its discretion in determining that the probative value of the evidence outweighed its prejudicial effect because "[Massachusetts] is entitled to elicit the fact that [Cruzado] could have been enraged, not just because he was allegedly touched by [a] gay man, but he was allegedly touched by an African-American man."  Commonwealth v. Cruzado, 103 N.E.3d 732, 737-38 (Mass. 2018).  The SJC also stated in a footnote that "[t]he defendant's argument that the admission of the word 'nigger' as evidence of racial animus violated his due process rights is unavailing, as the word came from his own mouth several times."  Id. at 738 n.2.

On November 13, 2018, Cruzado filed a pro se petition for habeas relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts.  The petition claimed that: (1) Cruzado's right to due process was violated when the state trial court allowed, over Cruzado's objection, admission of portions of the recorded police interview described above in which Cruzado used a racial slur in reference to the victim; and (2) Cruzado's trial counsel rendered constitutionally ineffective assistance by failing to file a motion to suppress the fruits of the search and seizure of a cell phone.

After appointing counsel for Cruzado, the District Court considered and denied Cruzado's petition in a November 3, 2021, memorandum and order. The District Court explained in the ruling that it was "not inclined to issue a certificate of appealability" but would "give Cruzado until December 3, 2021[,] to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to either or both grounds in the Petition."

On November 30, 2021, Cruzado filed a motion for an extension of time to December 10, 2021, to file a memorandum of law in support of the issuance of a certificate of appealability ("COA"). The District Court granted Cruzado's motion for an extension of time after noting that there was no objection to the motion by the respondent, Nelson Alves ("Alves"), Superintendent of Massachusetts Correctional Institution, Norfolk. Cruzado filed his memorandum of law in support of issuance of a COA on December 9, 2021.

The District Court issued a COA on January 4, 2022, as to the due-process-based claim only, and Cruzado filed a notice of appeal on the same day. This Court then entered an order on March 21, 2022, that directed Cruzado either to move for voluntary dismissal of the appeal pursuant to Federal Rule of Appellate Procedure 42(b) or to show cause, in writing, why his appeal should

not be dismissed as untimely. The show-cause order noted that Cruzado filed a notice of appeal on January 4, 2022, from the District Court's November 3, 2021, decision denying his petition and that, under Federal Rule of Appellate Procedure 4(a)(1)(A), a notice of appeal in a civil case must be filed within thirty days of the judgment or order from which the appeal is taken.

Cruzado responded to the show-cause order on March 22, 2022. He stated in the response that he believed that no notice of appeal could be filed until a COA had been issued. On December 16, 2022, this Court issued an order that stated that Cruzado's appeal would be allowed to proceed without prejudice to further consideration of the jurisdictional question by the panel assigned to decide the merits of Cruzado's petition.

## II.

We begin with the question of whether we have appellate jurisdiction. That question turns on whether Cruzado filed a timely notice of appeal. See 28 U.S.C. § 2253; Bowles v. Russell, 551 U.S. 205, 214 (2007). Federal Rule of Appellate Procedure 3 sets forth the requirements that a filing must satisfy to constitute a notice of appeal, while Rule 4(a)(1)(A) provides that the notice of appeal in a civil case must be filed "within 30 days after entry of the judgment or order appealed from."

On January 4, 2022, Cruzado filed a document that constituted a notice of appeal under Rule 3. But that document was not timely under Rule 4(a)(1)(A), because the District Court denied Cruzado's petition on November 3, 2022.[1] Thus, Cruzado asks us to focus on a second filing that he made, which he contends was not only filed within Rule's 4(a)(1)(A)'s thirty-day window but also constituted a notice of appeal. The filing is the motion that Cruzado made on November 30, 2022, in which he sought an

---

[1] Cruzado argues in the alternative that the notice of appeal that he filed on January 4, 2022, was timely because it was filed within thirty days of the District Court's issuance of the COA. He rests this contention on the ground that the order that denied the petition for habeas corpus was not a "final order" because at the time of the order the District Court had not ruled on whether a COA should issue. He relies for this contention on Rule 11(a) of the Rules Governing Section 2254 Cases, which states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and our Circuit's Local Rule 22.0(a), which states that "[t]hese . . . rules require the district judge to rule on the issuance of a certificate of appealability when a final order issues." But there is no basis for concluding that an order denying a petition for habeas corpus must be accompanied by such a ruling on the COA to constitute a "final" order. See, e.g., Bell v. Mizell, 931 F.2d 444, 444-45 (7th Cir. 1991) (per curiam). Cruzado does advance for the first time in his reply brief the additional contention that the specific order in this case that denied his petition was not "final" because of what that order stated regarding the time that he would have in which to apply for a COA. But we do not consider that contention here, because Cruzado did not make it in his opening brief. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief.").

extension of time to file a memorandum of law in support of an application for a COA.

## A.

Rule 3(c)(1) provides that a notice of appeal must name the parties taking the appeal, the judgment or order from which the appeal is being taken, and the court to which the appeal is being made. At the same time, Rule 3(c)(7) states that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal."

In Thomas v. Morton Int'l, Inc., 916 F.2d 39, 40 (1st Cir. 1990) (per curiam), we confronted a question about the kinds of filings that constitute notices of appeal. The issue arose in connection with a motion for an extension of time to file a notice of appeal. Id.

Notably, the plaintiff in Thomas had moved for an extension of time to file his notice of appeal on the ground that his counsel had learned of the granting of "Defendant's Motion to Dismiss" only a week earlier. The motion for an extension of time also stated that "[t]he [p]laintiff believes and avers that he has a meritorious Appeal and that the Motion to Dismiss was allowed without hearing." After the motion for an extension of time was granted, the plaintiff then filed a notice of appeal outside of

the extended time given.  The question thus arose on appeal as to whether a timely notice of appeal had been filed.  Id.

In assessing whether there was appellate jurisdiction, we acknowledged in Thomas the proviso set forth in Rule 3(c)(7) and explained that the "history behind this proviso indicates that courts have, at times, interpreted the formal requirements of a notice of appeal liberally, especially in cases of uncounseled persons like pro se prisoners, where letters evidencing a desire to appeal have been accepted as timely, informal notices of appeal."  916 F.2d at 40.  But we explained that the plaintiff who was claiming that the motion for an extension of time to file a notice of appeal itself constituted the notice of appeal "[was] represented by counsel, and his motion for an extension of time in no way purported to place the court and opposing party on notice that he was at that time appealing, and that motion was meant functionally to be the requisite notice of appeal."  Id.  We further explained that "the motion was a request to the court for additional time within which to file the required notice" before concluding that, in such circumstances, "[t]o treat such a request for extra time as the notice itself would be to render the notice requirement meaningless."  Id.  Indeed, we noted, the appellant's attorney "clearly recognized the difference between the two documents when, out of time, he later filed a notice of appeal."

Id.  Thus, we rejected the plaintiff's contention that his motion constituted a notice of appeal.  Id.

Two years after we decided Thomas, however, the Supreme Court of the United States decided Smith v. Barry, 502 U.S. 244 (1992).  The Court explained there that Rule 3's requirements must be "liberally construed" and that even when a filing is "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires."  Id. at 248 (alteration in original) (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17 (1988)).  Indeed, the Court went on to state in Smith that "[w]hile a notice of appeal must specifically indicate the litigant's intent to seek appellate review," it is "the notice afforded by [the] document, not the litigant's motivation in filing it" that "determines the document's sufficiency as a notice of appeal."  Id.  And, on that basis, Smith held that an inmate's "informal brief" in response to a briefing order could qualify as the functional equivalent of a notice of appeal.  Id. at 250.

Then, in the wake of Smith, we held in Campiti v. Matesanz, 333 F.3d 317, 319-20 (1st Cir. 2003), that a motion for appointment of counsel was the "functional equivalent" of a notice of appeal.  We did so even though the motion was not styled as a

notice of appeal and merely requested that the district court take a step -- the appointment of counsel -- that could facilitate the later filing of such a notice.  Id. at 320.  Moreover, we did so despite our ruling in Thomas, as we explained in Campiti that, even though it was not clear if Thomas survived Smith, it was clear under Smith that the specific motion for appointment of counsel at issue in Campiti did all that Smith required for a filing to constitute a notice of appeal.  333 F.3d at 320, 320 n.3.

As a result of our ruling in Campiti, Cruzado's motion constitutes the functional equivalent of a notice of appeal if it is materially indistinguishable from the motion in Campiti.  We therefore first turn our attention to Campiti before then turning back to the filing at hand.

**B.**

The appellant in Campiti was Francesco Campiti ("Campiti").  Id. at 320.  He was a pro se habeas petitioner who had filed a document that indisputably constituted a notice of appeal but that was untimely because he had not filed it within the required window of time established by Federal Rule of Appellate Procedure 4.  Id.  Campiti nonetheless claimed that he had filed a timely notice of appeal based on either of two other filings that he had made to the district court, as each of those filings had been made within the required window of time.  Id.

The first filing was a motion for an extension of time to file a notice of appeal. Id. The second filing was a motion for appointment of counsel. Id.

We did not address whether the extension-of-time motion was the functional equivalent of a notice of appeal because we held that Campiti's appointment-of-counsel motion was. Id. We concluded that, even assuming without deciding that our ruling in Thomas survived Smith, Smith required that we treat Campiti's motion for appointment of counsel as a notice of appeal. See Campiti, 333 F.3d at 320, 320 n.3.

We reasoned that, under Smith, a filing constitutes the functional equivalent of a notice of appeal "so long as it gives the pertinent information [required by Rule 3] and evinces an intention to appeal." Campiti, 333 F.3d at 320. We further explained that "[w]hether a particular type of document is the functional equivalent of a notice of appeal may depend on its content and surrounding circumstances rather than on any general rule." Id. Then, after having articulated these principles, we concluded that the filing at hand both evidenced an intention to appeal and gave the pertinent information. Id.

To support our conclusion, we noted that Campiti had stated in his motion for appointment of counsel:

> I am the petitioner in the above captioned
> habeas corpus proceeding. My counsel, Vincent

Bongiorni, Esq., has been allowed to withdraw by the court.  I am indigent and hereby request that the court appoint counsel to represent me for the purposes of filing a notice of appeal and a request for a certificate of appealability.  A financial affidavit is attached for the court's consideration.

Id.  Based on this statement, we concluded that the motion "plainly evidences an intention to appeal" because it "asks for counsel to be appointed" for specific purposes and then goes on explain that the request is being made "'for the purposes of filing a notice of appeal' and for requesting a certificate of appealability."  Id. And, with respect to whether the filing (which named the parties in the caption) contained the "pertinent information," we acknowledged that "[a]dmittedly, the document does not specify the judgment appealed from or the appellate court[.]"  Id.  We nonetheless concluded that "here, where no doubt exists as to either, Rule 3 buttressed by latitude for a pro se litigant forgives these 'informalit[ies] of form.'"  Id. (alteration in original) (quoting Fed. R. App. P. 3(c)(4)).

## c.

How similar, then, is Cruzado's motion to Campiti's?  At first blush, it may not seem similar at all.  Cruzado's motion sought an extension of time to complete certain work, while Campiti's sought appointment of counsel.  Id.  Cruzado's motion also made no reference to filing a notice of appeal, while

- 14 -

Campiti's specified that appointment of counsel was being sought for the "purposes of" filing such a notice. Id.

But, as mentioned above, Campiti makes clear that, after Smith, the determination of whether a filing is the functional equivalent of a notice to appeal "depend[s] on [the filing's] content and surrounding circumstances rather than on any general rule." Id. We must focus, therefore, on the "content and surrounding circumstances," id., of the specific motion that Cruzado filed. And, for the reasons we will next explain, we conclude that this case-specific inquiry shows that, given our ruling in Campiti, Cruzado's motion is the functional equivalent of a notice to appeal. See Clark v. Cartledge, 829 F.3d 303, 306-07 (4th Cir. 2016) (holding that a motion for an extension of time to file an application for a COA was the functional equivalent of a notice of appeal when the petitioner stated in his motion that he had limited access to the prison-law library that "prevent[ed] him from conducting the necessary legal research to properly file" and stating that "to require more explicit language from a pro se litigant would turn Smith's instruction that we liberally construe Rule 3's requirements on its head" (alteration in original)).

**1.**

We recognize that Cruzado's motion on its face requested only that the District Court take an action that, at most, would

have facilitated the later filing of a notice of appeal.  In that respect, the motion would not appear to have "purported to place the court and opposing party on notice that [Cruzado] was at that time appealing," Thomas, 916 F.2d at 40 (emphasis added), in the way that, say, an informal letter from a pro se prisoner requesting an appeal would, or even the brief in Smith did.  Rather, like the motion in Thomas, Cruzado's motion would appear to have at most purported to notify the opposing party and the court of an intention to file a notice of appeal after the memorandum of law in support of the motion for the issuance of the COA had been completed.  And, in that respect, Cruzado's motion would appear to have been just as incapable of constituting a notice of appeal as Thomas held the motion for an extension of time in that case was.

The motion in Campiti, however, did not purport to give opposing counsel or the court notice that Campiti was appealing "at [the] time [of the]" motion itself, Thomas, 916 F.2d at 40, any more than the motion in Thomas did.  Rather, the motion in Campiti expressly sought only to have counsel appointed for the purpose of a notice of appeal thereafter being filed.  333 F.3d at 320.  Yet, Campiti, based on Smith's observation that a notice of appeal "must specifically indicate the litigant's intent to

- 16 -

seek appellate review," 502 U.S. at 248, held that the motion Campiti filed did evidence his intent to appeal.  333 F.3d at 320.

Thus, what mattered in Campiti for purposes of establishing the movant's intent to appeal was not whether -- as Thomas held -- the motion made clear that no future filing would be made that itself would be a notice of appeal.  What mattered was whether the motion at issue evidenced the movant's intent to appeal, even if the filing on its face contemplated that the notice of appeal itself would be filed only later.  Campiti, 333 F.3d at 320.

Our ruling in Campiti, unlike Thomas, both post-dates and relies on the Supreme Court's ruling in Smith.  We thus do not see how, given Campiti, we could hold that the mere fact that Cruzado's motion sought action from the District Court that would at most permit a later filing of a notice of appeal in and of itself precludes that motion from qualifying as a notice of appeal.  As a result, we conclude that, to the extent that Thomas would require us to hold otherwise, it cannot survive Campiti.  See United States v. Guerrero, 19 F.4th 547, 552-53 (1st Cir. 2021) (outlining the law-of-the-circuit doctrine).

Of course, even after Campiti, the "content and surrounding circumstances" of a filing must make it evident that the litigant who made the filing "inten[ds] to appeal."  333 F.3d

- 17 -

at 320 (citing Smith, 502 U.S. at 244, 248-49).  And a motion for an extension of time to file a substantive memorandum in support of a motion for issuance of a COA or to file a notice of appeal does not necessarily evidence such an intent.  Depending on the "content and surrounding circumstances," such a motion, like a motion for appointment of counsel, may do no more than manifest that the movant needs additional time to decide whether to appeal. Id.  But we conclude that it is as evident from the "content and surrounding circumstances" of Cruzado's specific motion that he intended to appeal as it was from the "content and surrounding circumstances" of Campiti's specific motion that Campiti intended to do so.  Id.  And that is so even though Cruzado's motion made no reference to a notice of appeal as such.

We base this conclusion on the fact that Cruzado's motion stated in relevant part: "[C]ounsel for [Cruzado] states that due to a busy trial schedule, she is unable to complete the Memorandum [of Law in Support of Issuance of COA] within the time allotted" and that she sought an extension of time "from December 3, 2021 to December 10, 2021."  As this quoted text reveals, the motion not only plainly sought the extension of time to "complete" a memorandum of law in support of a COA but also sought the extension to a date after the time for filing the notice of appeal otherwise would have run.  Those features of the motion are

- 18 -

important for present purposes. If Cruzado did not intend to file the notice of appeal along with the request for the COA, then he would have had no reason to seek to extend the time to complete the work needed to file a COA to a date after the thirty-day time limit for filing the notice of appeal would have run. Therefore, when we consider Cruzado's motion in context, it evidenced an intention to appeal no less than the motion in Campiti did -- again, notwithstanding that Cruzado's motion, unlike Campiti's, made no reference to a notice of appeal.

## 2.

All that said, Campiti makes clear that it is not enough under Smith for a filing to evidence the movant's intent to appeal. It must also contain the "pertinent information" specified in Rule 3 -- namely, the information that Rule 3 provides that a notice of appeal must contain. Campiti, 333 F.3d at 320. As a result, we now turn to the question of whether Cruzado's motion, like Campiti's, contained the "pertinent information" required for a filing to be deemed the functional equivalent of a notice of appeal. Id. We conclude that Cruzado's motion did.

First, Cruzado's motion named the parties to the appeal because it named Cruzado and Alves in its caption. Second, although Cruzado's motion did not name the court to which Cruzado intended to take his appeal, we agree that, consistent with

Smith's instruction to liberally construe the requirements of Rule 3, "failures to meet this requirement are excused where there is only one court to which the appeal can be taken." United States v. Gooch, 842 F.3d 1274, 1277 (D.C. Cir. 2016); see Campiti, 333 F.3d at 320. And so, because there is no other appellate court to which Cruzado could have wanted to appeal but ours, we conclude, as we did in Campiti in which the appellate court also was not named but was equally obvious, id., that Rule 3's requirement that a notice of appeal must "name the court to which the appeal is taken" poses no bar to our deeming the motion at hand the functional equivalent of a notice of appeal.

That brings us to the requirement in Rule 3(c)(1)(B) that the notice of appeal must "designate the judgment -- or the appealable order -- from which the appeal is taken." Cruzado's motion nowhere specifically stated that Cruzado intended to challenge the District Court's November 3, 2021, memorandum and order denying his habeas petition. But the motion did include the District Court docket number on its face, and the motion for an extension of time was the next filing on the docket after the only substantive order by the District Court in this case -- which, as it happens, was the order denying Cruzado's habeas petition -- and a companion order dismissing the case. Therefore, we conclude, consistent with Campiti, that Cruzado has met the

requirement that a notice of appeal must designate the order from which the appeal is being taken, as Cruzado's motion manifested an intent to appeal, and the only order from which that intended appeal could have been taken is the November 3, 2021, memorandum and order denying his habeas petition. See 333 F.3d at 320 (finding that Rule 3's requirement that the judgment appealed from be specified to have been satisfied, despite the request for counsel not specifically naming the judgment, when no doubt existed as to which judgment was being appealed); Becker v. Montgomery, 532 U.S. 757, 767 (2001) ("[I]mperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court."); cf. Bailey v. Cain, 609 F.3d 763, 766-67 (5th Cir. 2010) (concluding that a motion for an extension of time to file a COA request could not be treated as a notice of appeal because it did not identify the judgment or order being appealed in a case where the District Court had entered four orders and a final judgment, so it was not obvious which decision the petitioner sought to challenge).

**3.**

There remains one last point to address: Campiti was a pro se litigant while Cruzado, like the litigant in Thomas, is not. Alves contends that this distinction is dispositive, such

that "[Cruzado's] motion for an extension of time to file a memorandum in support of a request for COA should not be construed as the functional equivalent of a notice of appeal in the particular circumstances of this case."

Alves is right that we have indicated that pro se litigants should be given leniency when construing the requirements of Rule 3. See Campiti, 333 F.3d at 320; Thomas, 916 F.2d at 40. Nonetheless, Rule 3(c)(7)'s requirement that a notice of appeal not be rejected "for informality of form or title" applies to all litigants and does not draw distinctions between those represented by counsel and those who are not. See Bell v. Mizell, 931 F.2d 444, 445 (7th Cir. 1991) (liberally construing an application for a certificate of probable cause -- the pre-Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, equivalent of a certificate of appealability -- as a notice of appeal notwithstanding the fact that the petitioner was represented by counsel); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992); Wells v. Ryker, 591 F.3d 562, 565 (7th Cir. 2010); Rodgers v. Wyo. Att'y Gen., 205 F.3d 1201, 1205 (10th Cir. 2000) (concluding that "the filings of counseled habeas petitioners should be given the same liberal construction as those of pro se petitioners"), overruled on other grounds, Moore v. Marr, 254 F.3d 1235, 1239

(10th Cir. 2001). Thus, we reject Alves's contention that the fact that Cruzado was represented by counsel provides a basis for our concluding that his motion is not the functional equivalent of a notice of appeal even though Campiti's was. As the Seventh Circuit has noted, however: "We do not condone the failure of [appellant's] attorney to file a formal notice of appeal in timely fashion -- and trust there will be no repetition of the oversight by members of the bar of this [C]ourt[.]" Bell, 931 F.2d at 445.[2]

**D.**

For the reasons set forth above, we conclude that Cruzado did file a timely notice of appeal.[3] We do so, moreover,

---

[2] We do note that here there was potential confusion about when the final order from which the appeal could be taken had entered. See supra note 1.

[3] In order for us to have jurisdiction over an appeal from the denial of a habeas petition, the petitioner must show not only that a timely notice of appeal was filed pursuant to Federal Rule of Appellate Procedure 3(a) but also that the district court has issued a COA or that a COA must be issued by our Court. See 28 U.S.C. § 2253. Here, the District Court issued a COA on January 4, 2022, as to the due-process-based claim. See Campiti v. Matesanz, 333 F.3d 317, 319 (1st Cir. 2003) (accepting the district court's grant of a certificate of appealability, even though the grant occurred after Campiti's filing of the motion for appointment of counsel); cf. United States v. Rodríguez-Rosado, 909 F.3d 472, 477 (1st Cir. 2018) ("[The divestiture rule] provides that filing a notice of appeal, for the most part, shifts 'jurisdiction' from the district court to the court of appeals. . . . But, because the judge-made divestiture rule isn't based on a statute, it's not a hard-and-fast jurisdictional rule. . . . The rule, rather, is rooted in concerns of judicial economy, crafted by courts to avoid the confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same

even though the only filing that Cruzado timely made was the filing on November 30, 2021, in which he sought merely an extension of time to make another filing. This conclusion is required because that motion for an extension of time constituted the functional equivalent of a notice of appeal under Campiti, as it both evidenced an intent to appeal and contained the "pertinent information," 333 F.3d at 320, no less than the motion at issue in Campiti did.

## III.

We now turn to the merits of Cruzado's challenge to the District Court's denial of his habeas petition. The challenge concerns only his due-process-based claim for habeas relief.

Under AEDPA, Cruzado cannot show that he is entitled to habeas relief based on his federal constitutional due-process claim unless he can show that the SJC's ruling that rejected that claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). The District Court held that Cruzado failed to make that showing. Reviewing de novo, see Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007), we agree.

_____

case. . . . Hence its application turns on concerns of efficiency and isn't mandatory." (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982))).

- 24 -

In the state-court proceedings, the trial judge admitted into evidence the unredacted recording of the police interview in which Cruzado used the racial slur that provides the predicate for his due-process-based claim. The trial judge did so pursuant to a principle of state evidentiary law that states that "[a]lthough the prosecution is not permitted to introduce evidence of a defendant's bad character to show his or her 'propensity to commit the crime charged, . . . such evidence may be admissible if relevant for some other purpose,' including motive." Commonwealth v. Cruzado, 103 N.E.3d 732, 737 (Mass. 2018) (quoting Commonwealth v. Howard, 16 N.E.3d 1054, 1069 (Mass. 2014)). The trial judge explained that the unredacted recording constituted evidence of partial motive (i.e., racial animus). Id. at 737-38.

The SJC ruled that "the [trial] judge did not abuse her discretion in determining that the probative value of the evidence outweighed its prejudicial effect." Id. at 738. The SJC agreed with the trial judge that the evidence of the unredacted police interview did have special probative value in showing a potential racial motive for Allen's killing, such that the recording of the police interview could only be excluded if its special probative value in showing such a motive was outweighed by its unduly prejudicial effect. See id. at 737-38. But the SJC pointed out

- 25 -

that to mitigate the prejudicial effect of the racial slur at issue, the trial judge conducted an individual voir dire of potential jurors to eliminate potential bias. Id. at 738. Furthermore, the SJC noted that although the trial judge did not provide an instruction to the jury instructing the jurors to limit the use that they could make of the racial slur in their deliberations, Cruzado did not request one, and "[t]here is no requirement that the judge give limiting instructions sua sponte." Id. (quoting Commonwealth v. Sullivan, 768 N.E.2d 529, 537 (Mass. 2002)). Nor, the SJC went on to state, "does the lack of a limiting instruction necessarily create a substantial likelihood of a miscarriage of justice." Id. (quoting Sullivan, 768 N.E.2d at 537).

As we mentioned above, the SJC also included a footnote at the end of its discussion regarding the admission of the recorded police interview. That footnote stated in full: "The defendant's argument that the admission of the word 'nigger' as evidence of racial animus violated his due process rights is unavailing, as the word came from his own mouth several times." Id. at 738 n.2.

**B.**

Errors of state law, including the misapplication of evidentiary rules, are "not enough to warrant federal habeas

relief." Coningford v. Rhode Island, 640 F.3d 478, 484 n.4 (1st Cir. 2011). But state-law evidentiary errors may be considered as "part and parcel of the overarching constitutional claim" of a denial of due process in some exceptional cases. Id. More specifically, a "misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief" when the state court's application of state law is "so arbitrary or capricious as to constitute an independent due process . . . violation." Id. at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

Here, Cruzado argues that Massachusetts law barred the unredacted recording in which he used the racial slur from being admitted into evidence. He then further contends that the SJC's approval of the recording's admission resulted in a fundamentally unfair trial that violated his federal due-process rights because "serious evidentiary errors that result in a fundamentally unfair trial can provide a basis for habeas relief, especially where such errors infuse the trial with inflammatory prejudice." And, finally, Cruzado argues that the SJC's decision was an unreasonable application of clearly established federal due-process law, given the nature of the "misbegotten evidentiary

ruling" that he contends that the SJC blessed.[4]  Id.  We conclude, however, that there is no merit to this contention.

The SJC explained that although Massachusetts law provides that "the prosecution is not permitted to introduce evidence of a defendant's bad character to show his or her propensity to commit the crime charged," "such evidence may be admissible if relevant for some other purpose," including motive. Cruzado, 103 N.E.3d at 737 (internal quotations omitted).  The SJC then concluded -- reasonably in our judgment -- that Cruzado's use of the racial slur in the police interview held substantial probative value in demonstrating whether the crime may have been partially motivated by racial animus, given that the prosecution's theory of the case was that Cruzado could have been angered to

_____

[4] Alves argues in his briefing to us that Cruzado has waived any argument on appeal that admission of the recording was an "unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d), because Cruzado only argued to the District Court that the admission of the recording was "contrary to . . . clearly established Federal law," id.  We cannot agree with Alves. Even if Cruzado argued to the District Court only that admission of the recording was contrary to clearly established federal law, the argument that admission of the recording was an unreasonable application of clearly established federal law was directly ruled on by the District Court.  Indeed, Alves even conceded during oral argument that the District Court addressed both the "unreasonable application of" and "contrary to" prongs of the AEDPA standard, id., and the District Court ruled on both grounds.  And Alves also conceded during oral argument that "[s]ince the [D]istrict [C]ourt addressed and passed on the ["unreasonable application of" ground] directly, [Cruzado] is free to address [that ground] so raised in this appeal." Fid. Coop. Bank v. Nova Cas. Co., 726 F.3d 31, 39 (1st Cir. 2013).

the point of murder not just because he was touched by a gay man but because he was touched by a gay, African-American man.

Moreover, the SJC determined -- again, reasonably in our view -- that admission of the recording to show motive was not unduly prejudicial to Cruzado, both because the trial judge conducted an individual voir dire of potential jurors to eliminate potential bias, id. at 738; see also Commonwealth v. Alleyne, 54 N.E.3d 471, 479-80 (Mass. 2016) (discussing the use of voir dire to mitigate prejudice); Commonwealth v. De La Cruz, 540 N.E.2d 168, 171 (Mass. 1989) ("[W]hen requested, we encourage individual voir dire as to possible juror prejudice based on ethnic considerations."), abrogated on other grounds by Commonwealth v. Colon, 121 N.E.3d 1157, 1173-77 (Mass. 2016), and because Cruzado did not request a limiting instruction to disregard or otherwise not infer anything from Cruzado's use of the racial slur. In that latter regard, the SJC reasonably explained both that "there is no requirement that the [trial-court] judge give limiting instructions sua sponte," Cruzado, 103 N.E.3d at 738 (quoting Sullivan, 768 N.E.2d at 537), and that, in light of the probative value of the evidence that was admitted, "the lack of a limiting instruction [does not] necessarily create a substantial likelihood of a miscarriage of justice," id. (quoting Sullivan, 768 N.E.2d at 537). Thus, we see no basis for concluding that the SJC's

determination that the trial judge did not violate Massachusetts evidence law in admitting the recording represented a misapplication of Massachusetts evidence law, let alone that the SJC's determination represented such an unreasonable application of Massachusetts evidence law that it gave rise to a due-process violation.

Cruzado separately contends that the SJC's decision unreasonably applied controlling Supreme Court precedent about the right to due process because the SJC dismissed his due-process claim in a single-sentence footnote that misstated the law. Here, he contends "that the footnote wrongly asserted that due process concerns never arise where the prejudicial evidence comes from a defendant's own statements."

The footnote appears at the end of the SJC's discussion regarding the admission of the recorded police interview. It states: "The defendant's argument that the admission of the word 'nigger' as evidence of racial animus violated his due process rights is unavailing, as the word came from his own mouth several times." Id. at 738 n.2.

If read out of context, this footnote might seem to suggest, as Cruzado contends, that the admission into evidence of a defendant's own statements cannot ground a due-process claim in any circumstance, when in fact the admission into evidence of a

defendant's own statements violates due process under any number of circumstances, including when they were made involuntary, see United States v. Lawrence, 889 F.2d 1187, 1189 (1st Cir. 1989), or in violation of Miranda v. Arizona, 384 U.S. 436 (1966). But, when the discussion in the footnote is read in the broader context of the SJC's opinion, it is evident that Cruzado's contention is without merit. And that is so even if we were to assume that Cruzado is arguing that, notwithstanding that the recording's admission into evidence comported with Massachusetts state law, its admission into evidence still violated his federal due-process rights and the SJC unreasonably held otherwise.

As previously mentioned, the relevant footnote comes at the end of the SJC's discussion of its reasons for upholding the trial judge's exercise of discretion to allow the recording into evidence. Cruzado, 103 N.E.3d at 738 n.2. In that discussion, the SJC, as we have already concluded, reasonably applied state law to conclude, among other things, that the evidence had special probative value and was not unduly prejudicial to Cruzado, such that the state trial-court judge did not abuse her discretion to admit the recording. Id. at 736-38. That discussion of why the trial judge did not abuse her discretion to admit the recording and did not misapply state evidentiary law would also explain why Cruzado's due-process argument is unavailing. Thus, because the

relevant footnote is appended to that discussion, we read the footnote to be saying only that the defendant's due-process argument fails because, in addition to all the reasons stated in the main text of the opinion, the racial slur "came from [Cruzado's] own mouth several times." Id. at 738 n.2; see Commonwealth v. Spencer, 987 N.E.2d 205, 217 (Mass. 2013) ("An extrajudicial statement made by a party opponent is an exception to the rule against the introduction of hearsay, and is admissible unless subject to exclusion on other grounds."); see also Ayala v. Alves, 85 F.4th 36, 58 (1st Cir. 2023) ("Our 'highly deferential standard for evaluating state court rulings' requires that we read the SJC's opinion in such a way as to give its choice of language 'the benefit of the doubt.'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002))). Therefore, we conclude that there is no merit to Cruzado's footnote-based argument for concluding that the SJC unreasonably applied clearly established Supreme Court precedent in rejecting his due-process claim.

## IV.

For the foregoing reasons, we **affirm** the District Court's rejection of Cruzado's petition for habeas relief. The parties shall bear their own costs.